OXFORD JUNCTION SAVINGS BANK, Appellant, v. F. E. Cook, Appellee.

**Examination of witness:** OBJECTION TO EVIDENCE. A party cannot
1  wait until a witness has answered and then object if the evidence is not satisfactory; his remedy after the answer is by motion to strike.

**Instructions:** STATING THE ISSUES: CONSENT OF PARTIES: ESTOPPEL.
2  Conceding the impropriety of making a literal copy of the pleadings in stating the issues to the jury, a party who has consented to such procedure cannot insist that it was erroneous.

**Bills and notes:** DEFENSES: INSTRUCTIONS. A defendant in a suit
3  on a promissory note alleged in defense that the note was given to secure money with which to purchase horses and that he signed the note simply as surety, that to indemnify him this defendant retained an interest in the horses so purchased, but that he released his interest upon an agreement of plaintiff to discharge him from such liability; that after such discharge plaintiff appropriated the proceeds of certain other notes belonging to him and deposited as collateral security for the note

in suit. Held, that an instruction that if the agreement contended for by defendant was proven he was absolved from liability on the note and entitled to have his collateral restored to him was correct; but if erroneous the plaintiff could not complain.

**Verdict:** RECALL OF JURY: CORRECTION OF ERROR. After the return of a sealed verdict the court has no authority to recall the jury and send them out under further instructions with a view to further findings which shall in effect declare the rights of the parties to be other or different than are found and declared in the sealed verdict, but may recall and send them back with instructions to correct a manifest error in form, or to supply an omission of some matter necessary to complete the verdict as already found.

*Appeal from Jones District Court.*— Hon. W. G. Thompson, Judge.

Tuesday, May 7, 1907.

Action at law on a promissory note. The defendant pleaded defensive matter, and also set up a counterclaim. Trial was had to a jury, resulting in a verdict and judgment for defendant. Plaintiff appeals.— *Affirmed.*

*D. H. Snoke* and *Remley & Remley,* for appellant.

*F. O. Ellison,* for appellee.

Bishop, J.— The note sued upon bears date July 21, 1904, is for $300, payable on demand, with interest, and is signed by defendant and Joe Wiceman. The answer admits the execution of the note, but as matter of defense thereto says that said note and another note for $200 had been given to plaintiff for money borrowed by Wiceman and N. D. Cook, son of defendant, to purchase horses for shipment, and that the money was so used; that the relation of defendant to the transaction was that of a surety only; and that he had a security interest in the horses so purchased until both said notes were fully paid. It is then

alleged that, when it was proposed by Wiceman and N. D. Cook to make shipment of the horses, he (defendant) refused to permit the shipment to be made in the name of Wiceman until the notes had been paid. And it is said that thereupon plaintiff bank, acting through its cashier, orally agreed with defendant that in consideration of the consent of defendant to permit shipment to be made in the name of Wiceman, and the relinquishment of all interest which he (defendant) had in the horses in question, the bank would release defendant from his liability on said notes, and would return to him certain collateral notes which had been deposited by him with the bank as security for the note in suit and the $200 note mentioned. The allegations follow that, in consideration of such agreement, defendant did release his interest in the horses, and did consent to the shipment thereof in the name of Wiceman, and that they were so shipped. In a counterclaim defendant pleads that the $200 note referred to in the answer, and the note in suit, were executed at the same time. The deposit of collateral notes as referred to in the answer is then alleged, and such notes are in general terms described. Then follows allegation of an agreement with plaintiff for release, and performance thereof on his part, substantially as alleged in the answer. And this is followed by allegation of a demand for the return of the collateral notes, and a refusal; that plaintiff has collected said notes and appropriated the proceeds, and the amount is said to be $500. In a reply, the plaintiff denies the agreement which is pleaded by defendant. It admits the execution of the $200 note as alleged in the answer, admits the deposit by defendant of the collateral notes as described in the counterclaim, also admits the collection of a portion of such collateral notes, but says that the amount thereof has been applied in liquidation "of the original indebtedness represented by said notes (the note of $200 and the note in suit) and overdrawn

account "; denies any misappropriation, and denies that anything is due defendant.

I.   Defendant assumed the burden of proof, and, in the course of the trial, called to the witness stand his son, N. D. Cook, and interrogated him with reference to the

1. EXAMINATION
OF WITNESS:
objection to
evidence.

terms of an agreement entered into between Wiceman and himself on the one part, and defendant on the other part, whereby defendant was to be the owner of all horses purchased until the notes given to the plaintiff bank were fully paid.   The witness responsively related the agreement, whereupon plaintiff objected on the ground that the conversation was in the absence of plaintiff, and therefore incompetent.   The objection was not timely, and for this reason, if for no other, was properly overruled.   A party may not wait until an answer is given, and then object if such answer is not satisfactory.   *State v. Marshall,* 105 Iowa, 44.   If, for any reason, the answer was thought to be improper, advantage should have been taken thereof by motion to strike; but this was not done.

II.   Complaint is next made of the refusal of the court to give an instruction to the jury as requested.   We shall not set out the request.   It is sufficient to say that the essential features thereof were embodied in the instructions given, and in as favorable language as plaintiff had right to expect.

III.   It appears that, in preparing the charge to be given the jury, the court used literal copies of the pleadings filed in the action for and as a statement of the issues, and,

2. INSTRUCTIONS:
stating the
issues: con-
sent of parties:
estoppel.

relying on what was said in *Swanson v. Allen,* 108 Iowa, 419, on that subject, it is now insisted that this was error; but, by an additional abstract filed by appellee, it is made to further appear that the course so pursued by the court was on consent of the parties, and appellant has not seen fit to question this by matter of record.   Conceding, then, the impropriety in

general of the course pursued, appellant is in no position to complain.

IV.   The fifth and sixth instructions given are complained of, and we shall consider them together.   In the fifth instruction, the jury was told that, as defendant admitted his execution of the note in suit, plaintiff should be allowed the amount due on said note, with interest, " subject, however, to have deducted from such amount, the amount you find, if any, due defendant on his counterclaim as hereinafter instructed." In the sixth instruction, it was said in respect of the counterclaim — and we follow the language with sufficient closeness — that such of the items thereof as were found due and unpaid should be allowed defendant and deducted from the amount found due and unpaid on the note in suit, and the difference so found, if any, will be your verdict in favor of the party in whose favor you find such difference; but you are also instructed that defendant pleads as a defense an oral agreement with plaintiff for his release from liability on the two notes signed by him, and the return to him of the collateral notes deposited by him as security, in consideration of his consent that the horses about to be shipped, should be shipped in the name of Wiceman.   " On this point you are instructed, if you find that such an oral agreement was made, and further that defendant did in pursuance thereof permit Wiceman to ship the horses in his own name, and that the horses were so shipped, then you will be warranted in finding a verdict for defendant, without regard to any amount due on said two notes of defendant, or any amount you find due defendant on his counterclaim, but you will then find for defendant the amount of the collaterals as your verdict in favor of defendant from the evidence, in case you find the oral contract was made as above instructed."

It must be confessed that the instructions are not to be commended as models of form, lucidity, and balance; but

3. BILLS AND NOTES: defenses: instructions.

must they be condemned because faulty in law, or misleading in method and clearness of statement? Counsel for appellant, in their attack upon the fifth instruction, say that there was error, for that under the pleadings there was no issue which would permit a recovery by plaintiff on the note, and at the same time allow defendant to recover anything on his counterclaim; that the jury should have been plainly told to allow plaintiff the amount due on the note in suit, unless they found that there had been an agreement to release. But, in our view, this is not adequate to a disposition of the question. It is evident that the fifth instruction was intended to present plaintiff's case from the most favorable possible point of view. The jury was told that plaintiff was entitled to recover in the full sum demanded in its petition, subject only to having such sum reduced or wiped out by a finding that the counterclaim of defendant had been proven in whole or in part. Surely, as to plaintiff, there was no error in this. Leaving out of sight for the moment the defensive matter pleaded in the answer, the allegation of the counterclaim is that with the making of the note sued upon there was a deposit of collateral notes, some of which, at least, had been collected, and the proceeds retained by plaintiff.

Now, on plainest principles, plaintiff was bound to account for the moneys so collected, and conceding that out of such moneys the $200 note had been paid, leaving a balance still on hand — and this plaintiff does concede in evidence — there could be no possible justification for a refusal on its part to apply such balance in payment of the note in suit; nor could there be warrant for the rendition of a judgment in its favor for any more than the difference between the amount remaining in its hands and the amount of the note sued upon. Of course, the theory of the counterclaim is that, in virtue of the release of defendant from liability on the notes, he became entitled to have the collateral notes, or the avails thereof, restored to him in toto.

He does not offer to make any deduction in case he shall fail to make good his defense of release. But for this the law will not permit him to be penalized by the entry of judgment against him for more than in fact he owes. Quite to the contrary, the law will make the offer for him.

Now, in our view, the only vice of the instruction lies in the fact that it ignores the defense of release as pleaded in the answer — a defense distinct from the counterclaim, and, if proven, complete in itself. But this was error of which the defendant only could complain.

Upon fair analysis, we think the sixth instruction should also be sustained. In its initial sentence, the thought of the fifth instruction seems to have been carried along; but, following this, the jury was told, in substance, that, if the agreement contended for by defendant both in his answer and counterclaim had been proven, then defendant was absolved from all liability on the notes signed by him, and was also entitled to have his collaterals restored to him intact, and they should so find. And inasmuch as plaintiff had refused to deliver such collaterals, on familiar principle, defendant was entitled to a money judgment for the value thereof. We conclude that the correctness of the instruction as matter of law is not open to serious doubt, and we are constrained to believe that on fair reading the thought thereof was sufficiently clear to be understandable by the average juror.

V. The court submitted to the jury three forms of verdict: One for use in case of a finding in favor of plaintiff, with a blank for the amount; one for use in case of a finding in favor of defendant, with a blank for the amount; and the third for use in case of a general finding in favor of defendant. The jury retired late in the day, and there was an agreement between the parties for a sealed verdict. During the night a verdict was reached, sealed up, delivered to the bailiff, and the jurors separated and went to their homes.

4. VERDICT: recall of jury: correction of error.

After the opening of court next morning, the verdict was opened, and was found to be a general verdict in favor of defendant; that is, the third form submitted with the instructions had been used. Nothing further was done until the day following, when, the jurors having been ordered to take seats in the box on request of defendant, the court gave a further instruction as follows: "You are instructed to retire and determine the amount you find due the defendant, if anything, and state the amount thereof in your verdict." Whereupon the jury, after retirement, returned a verdict in favor of defendant assessing the amount of his recovery at $508, and upon this verdict judgment was entered. Having objected to all these proceedings, and saved exceptions, the plaintiff now contends for reversible error.

We are not disposed to concede merit in the contention. To begin with, it cannot be considered that the verdict as first returned represented a finding to the effect that defendant had not been released on his notes, but that the debt had been paid from collections made by plaintiff on the collaterals. This is true because it was conceded on all hands that such collections were greatly less in amount than the face of the notes given to the bank. The only way, therefore, in which a verdict could have been found in favor of defendant, was by adopting the theory that an agreement for a release as alleged in the answer had been proven. As said by counsel for appellant in argument, only two forms of verdict should have been submitted; and this is equivalent to saying — as in truth it must be said — that either plaintiff was entitled to recover upon the note sued upon, subject as to amount to the application of payments arising from collections on the collaterals, or defendant was entitled to a verdict for the value of the collaterals.

Now, we agree that the court may not after a sealed verdict recall the jury to the box and send them out under further instructions, with a view to securing a further finding, which shall in effect declare that the rights of the re-

spective parties are other or different than as found and declared for in the sealed verdict; but no good reason exists in law why the court should not recall and send back a jury to correct a manifest error in form, or supply an omission of some matter necessary to the verdict as found, and thus complete the verdict, to the end that the party favored by the finding as made may have the full benefit to which thereunder, and in law, he is unquestionably entitled. We have frequently so held. In *Higley v. Newell*, 28 Iowa, 516, the action was on a note. The jury returned a sealed verdict as follows: " We, the jury, find for plaintiff." When court again convened, the jury was recalled, and again sent out under instructions to put their verdict in form. This they did by adding thereto the amount of the note sued on with interest. We held there was no error. A similar situation was presented in the case of *Lee v. Bradway*, 25 Iowa, 217, and in sustaining the judgment we said: " In view of the issues, the subsequent retirement of the jury was no more than the putting of their verdict in form." In *Wright v. Wright*, 114 Iowa, 748, the action was for board at a certain price per week. A sealed verdict was returned, and upon being opened at the convening of court it was found to be in this form: " We the jury, find for plaintiff, and assess the damages at $5 per week." The jury, on being recalled, and again sent out, returned their former verdict, with words and figures added, " for 87 weeks, $435." In disposing of the contention for error, we said: " The plaintiff's claim was for 87 weeks, and there was no controversy but that, if entitled to recover at all, she was entitled for that length of time. Hence the addition made to the verdict was the correction of a formal error." See, also, *Hamilton v. Barton*, 20 Iowa, 505; *Roberts v. Roberts*, 91 Iowa, 228. Now here, as we have seen, the defendant, if entitled to a verdict at all, was entitled to a verdict for the value of the collateral notes, and according to the evidence for plaintiff — undisputed by defendant — such notes had all

been collected by it, save one, and that was collectible when due. Accordingly, there was no controversy upon the subject of amount.

So, too, we find nothing of merit in the further contention of plaintiff that a different result should obtain in view of the length of time which elapsed before the jury was recalled, and the fact that some of the jurors had conversed with others concerning the verdict, etc. The jury was not recalled to pass upon any question of right left undetermined by it, but ·simply to complete its work by making calculation of the amount due defendant. It is not conceivable that the performance of this duty could have been influenced by the matters relied upon as constituting prejudice.

VI. Lastly, it is said, on behalf of appellant, that the verdict is not supported by the evidence, and is excessive. Respecting the agreement alleged in the answer, the oral evidence was in direct conflict. This could not have come about, under the circumstances, save that the witnesses to the point on one side or the other consciously swore falsely. But the question in dispute was for the jury — a finding might be made either way — and the verdict must be regarded as conclusive. It is said that the verdict was excessive in two· respects: (1) That the collaterals did not amount to $508; (2) that, under the agreement with defendant at the time of deposit, the collateral notes were to secure any other unsecured indebtedness held by the bank against him,. and that a portion of the proceeds of collection had been properly so applied. The record discloses that the face amount of the collateral notes was $452; each note antedated the trial by more than a year, and each bore interest at 8 per cent. from date. The notes are not brought into the record, and we are not advised of the dates of payment. Counsel does not advise us of the amount of the excess in the computation, and we have no accurate means of determining such amount, if any, for ourselves. It would

seem, however, that no serious error could have been made. As to the second matter of contention, it is sufficient to say that no such agreement was pleaded, and it was not asked that the existence thereof, and of the rights of plaintiff thereunder, if existing, be submitted to the jury. Moreover, there is no suggestion in the record that defendant is not solvent, and no reason appears why plaintiff may not in a proper proceeding enforce collection of any other obligation it may hold against him.

On the whole, we conclude that there was no error in the judgment, and it is *affirmed*.