CHESTER J. ELLER et ux., petitioners, v. HONORABLE DRING D. NEEDHAM, Judge, respondent.

No. 48776.

(Reported in 73 N.W.2d 31)

November 15, 1955.

Rehearing Denied February 10, 1956.

Chester J. Eller, of Des Moines, for petitioners.

No appearance for respondent.

THOMPSON, J.—As with Sam Weller's refractory periwinkle (see Dickens' "Pickwick Papers"), the facts and issues here are difficult to uncover. The record, consisting only of the respondent's return, is confused and involved; the appellees, having failed to appear in this court, give us no aid; and the appellant's statement of facts is meager. We shall endeavor to state the essence of the material matters involved.

The case comes to us by certiorari to the District Court of Iowa for the Ninth Judicial District, the respondent being one of the judges of that court. It appears that in the latter part of the year 1953 the petitioners commenced three separate actions against Dale A. Crabtree and Mildred L. Crabtree, all arising out of landlord and tenant relations. The defendants in these actions were tenants upon a farm owned by the petitioners in Polk County. The first action, designated as Law No. 61381, was in replevin, apparently to recover certain livestock. The second, Equity No. 62235, prayed for a landlord's attachment and the foreclosure of a landlord's lien against personal property of the defendant tenants. The third, designated as Law No. 61538, asked a landlord's attachment and foreclosure of a conditional sales contract against certain chattel property of the defendants. The defendants appeared and filed answers, but apparently eventually the issues were determined against them. Either late in 1953 or early in 1954 these three cases were consolidated. The fourth case of the series, an action to replevy money from the clerk, in which the rulings here complained of were made, is labeled Law No. 63965.

On March 2, 1954, the plaintiffs filed an application for the appointment of Robert Conley, one of the present intervenors.

as receiver to take charge of certain personalty, perhaps, although the record does not clearly so show, the same which was covered by the conditional sales contract relied upon in Law No. 61358. On March 4, 1954, Mr. Conley was appointed as receiver in accordance with the application, and duly qualified. On March 18 next the plaintiffs filed their application for removal of the receiver, and hearing was had. During the hearing the intervenor Leo J. Tapscott was appointed by the court as attorney for Mr. Conley. The application for removal was denied, being labeled by the court (through Judge Jordan) as "vicious, untrue, and perhaps libelous, and the court so finds." Shortly thereafter Mr. Conley resigned. After a hearing at which the plaintiffs appeared and resisted on April 29, 1954, fees were allowed to Conley as receiver and to his attorney, the order providing: "That the sum of $200 for receiver's fees and $6.16 for mileage shall be a part of the costs of the receivership and of this action." Mr. Tapscott was allowed fees of $50 as attorney for the receiver, and the order contained the same provision that "said fees are made a part of the costs of the receivership and of this action." The record before us does not show in which action the costs were so taxed, except that the orders were made after the consolidation and apparently applied to the consolidated action.

While the consolidated action was pending and undetermined, apparently by agreement of the plaintiffs and defendants therein, certain grain was sold and the proceeds paid to the sheriff. This was later paid to the clerk of the court. It is a residue of these moneys, in the sum of $1353.89, which was replevied from the clerk by the plaintiffs in Law No. 63965, the case in which the respondent is alleged to have acted illegally and in excess of jurisdiction. In the latter action the clerk of the court was the defendant, and Conley and Tapscott separately intervened, under the authority of section 643.4, Code of Iowa 1950, as claimants to the property involved or a part of it. Thereupon the plaintiffs-petitioners moved for a summary judgment that they were entitled to the entire fund. The respondent after hearing dismissed the motion insofar as it concerned the fees allowed to the intervenors and the other costs properly taxed in the office of the defendant clerk. In effect this holding means that the

court costs, including the fees of the receiver and his counsel, should be first paid from the fund, and the petitioners are entitled to the remainder. It is this ruling which the petitioners say exceeded the jurisdiction of the respondent, or shows that he was acting illegally.

■■■ I.   The first error assigned by the petitioners is that the respondent erred in assessing the costs in the summary judgment action against the plaintiffs, asserting:

"Every order and judgment of any court must have and be based on a pleading or record of some kind and there is none in this case.

"This rule of law is so well established in the State of Iowa that no citations are necessary."

We find no merit in this assignment. If we assume the correctness of the rule of law stated, there were petitions of intervention and resistances to the motion for summary judgment which justified the taxation of costs against the unsuccessful party, the petitioners herein. The taxation of costs against the losing party follows as a matter of course in the absence of unusual circumstances, which do not appear here.

■ II.   The second error assigned is thus stated:

"The lower court erred and had no legal right to separate Tapscott's and Conley's fees taxed as costs in Law 61538, and entered as a judgment therein against the Crabtrees, defendants, from other costs in the total sum of over $400."

In view of the fact that the respondent held, in effect, that all costs taxed should be retained by the clerk, the matter of separation is of no importance. We think, however, that anyone interested in the costs taxed had a right to intervene as a claimant of a part of the fund in controversy, under the specific provisions of section 643.4, supra.

III.   The real substance of the petitioners' complaint, if substance it has, is found in the third and final assignment of error. It is here contended that the decree in the cause denominated Law No. 61538 "barred and estopped the court from overruling said motion (for summary judgment) as amended"; and "Said decree and judgment in 61538 Law forever estops and bars said defendant (the clerk) and said intervenors and each of them

from establishing their claims or either of them against said fund replevied by the petitioners or obtaining any judgment therefor against the defendants." It is the evident claim of the petitioners that the language of the decree in Law No. 61538 is such that the fund held by the clerk, above referred to, must be paid over to them without deduction of court costs, which of course by specific order of the court included the receiver's fees and costs. Further detail in regard to this decree is necessary to an understanding of the problem involved.

It has been stated that the three cases, Law Nos. 61381 and 61538 and Equity No. 62235, were consolidated. The petitioners say, in argument, that separate decrees were rendered in each case; the respondent in his ruling on the motion for summary judgment says at least the findings of fact and conclusions of law were filed together as though all three cases were one case; and it seems apparent that after the consolidation and at least until the decrees were signed the cases were considered as one. We are not told in what case the receiver's and receiver's attorney fees were taxed, and we assume therefore they were taxed as costs in the consolidated case or in Law No. 61538, in which they were incurred. We will not presume error or illegality. Kuiken v. Garrett, 243 Iowa 785, 803, 51 N.W.2d 149, 160, 41 A. L. R.2d 1397; In re Estate of Heller, 233 Iowa 1356, 1362, 11 N.W.2d 586, 590, and cases cited. The orders taxing these fees as part of the costs were made over the objection of the petitioners herein, but have not been appealed from and are now verities.

The decree, which is entitled "No. 61538 Law", is long and involved. It is far from being a model of clarity; indeed, it at least approaches the border line between valid judgments and those which are held void for uncertainty. It was the holding of the respondent in his ruling on the motion for summary judgment that, if it did require that the money held by the clerk be paid over to the petitioners herein without deduction of the clerk's costs, including the receiver and attorney fees taxed as part of said costs, it was in effect a fraud upon the court. The court said that it had assumed the decree contained the usual provisions in regard to costs, which were always first deducted

from sums paid out by the clerk; and that, if the decree did not so provide, it was because he was not advised thereof by the petitioners. It said: "There was nothing in the Findings and Conclusions of this court on which the decree was based which gave Mr. Eller, who drafted the decree, any right to assume he was entitled to any such order. * * * this court signed it without hesitation and without any knowledge whatsoever that Mr. Eller was asserting any such proposition with reference to the costs."

The petitioners here do not point out to us the particular parts of the decree which they think require the clerk to pay over the entire sum in his hands (less a small amount not involved here) to them without deducting the taxable costs. They assume the decree so provides. We set out herewith three excerpts from the decree which come closest to bearing upon the question at issue:

"And said plaintiffs are further entitled to have their landlord's lien * * * established and enforced upon and against the money now in the sheriff's hands * * * from the sale of attached soybeans and corn in the sum of $2176.77, less the items ordered paid therefrom by the said sheriff and the clerk of the aforesaid court * * *.

"Said lien as foreclosed and enforced heretofore to continue in the hands of the clerk of this court when said fund less sheriff's costs is delivered to the clerk of said Polk District Court including the costs of this action subject to said deficiency judgment.

"That the clerk of this court shall pay and deliver unto the plaintiffs or either of them all or whatsoever is necessary to pay said deficiency judgment and then the court costs of this action and accrued costs if any out of the money ordered delivered by the Polk County Sheriff * * * less the said sheriff's costs, * * * that if there is not sufficient money in said clerk's possession from said sheriff fund to satisfy and pay to plaintiffs any deficiency judgment left after the sale of said personal property under said special execution and the court costs and accruing costs if any or either of them, that a general execution issue at the plaintiffs' request or either of them against said defendants for any balance remaining on either the judgment * * * or costs or both."

We are not persuaded that the decree directs the clerk to pay over all moneys in his hands, without deduction for costs, to the petitioners. Confused and subject to contradictory interpretations it certainly is; but we do not agree its terms make it a binding adjudication that the money should be made over without withholding sufficient to satisfy the costs. If we should construe it as the petitioners would have us, we should then be faced with the language of the trial court, the respondent here, in denying the motion for summary judgment, implying broadly that a fraud had been practiced upon the court in procuring its signature. It is said: "* * * the judgment may be attacked collaterally where fraud has been practiced in the very act of obtaining the judgment * * *." 49 C. J. S., Judgments, section 434, page 860.

But since we do not interpret the language of the decree as do the petitioners, we need not go further into the question of fraud in obtaining it. An attempt to analyze the foregoing quoted language would accomplish nothing except to unduly lengthen this opinion. He who runs may read; and he may likewise make his own analysis if so inclined. There may be language susceptible of the interpretation placed upon it by the petitioners; but we think the meaning to be gathered from the entire decree does not support their contention. The interpretation we place upon it we think follows the intent of the court as disclosed by the decree itself. It makes it certain instead of uncertain; it avoids the implication of fraud which would otherwise be present in view of the holding of the trial court; and it is in accord with long-established practice under which the clerks of our courts have deducted the taxable costs of record in their offices before disbursing funds in their hands. Here the trial court had made its findings of fact and conclusions of law, and it thereupon directed the plaintiffs' counsel, who was also one of the plaintiffs, to prepare a decree in conformity to the facts and law as found. True, the court was not prevented from reading what was presented to it. The petitioners say, but the respondent denies, that he was advised of its contents. It is the general custom of courts to rely upon the good faith of the attorney who prepares the decree that he will draw it in accord with the au-

nounced views of the court. We prefer here a holding that removes any implication counsel violated the confidence reposed in him by the court, and we find the language of the decree he prepared supports such a conclusion.

█ The respondent in his ruling on the motion pointed out another reason why it would not be binding upon the defendant clerk and the intervenors. They were not in court when the decree in Law No. 61538, the debated instrument, was signed, nor had they any notice of it. The fees of the intervenors had been allowed and taxed as part of the costs some months before, and could not be affected by a later ruling of which they had no notice.

IV. It is of interest to note another statute. Section 625.5 of the Code of 1950 is herewith set out: "All costs accrued at the instance of the successful party, which cannot be collected of the other party, may be recovered on motion by the person entitled to them against the successful party."

█ The only reason for the present controversy which comes readily to mind is that the defendants Crabtrees in the three original actions are insolvent; otherwise the plaintiffs therein, the petitioners here, could accept such sums as were left in the hands of the clerk after the payment of all costs and procure execution to make the remainder. If the Crabtrees are insolvent so that the costs cannot be collected from them, the costs of the receiver and his attorney could be collected from the petitioners in any event under the above statute. The receiver was appointed upon the application of the petitioners, and, although they shortly became dissatisfied with his conduct of his office, the costs thereof must still be held to have been incurred at their instance. Without doubt, this applies likewise to the great portion of the other taxable costs. The petitioners instituted the three actions. They are little prejudiced, if at all, by the respondent's ruling denying their motion as to the amount of the costs.

For the reasons set out in Divisions I, II, and III we find no illegality or lack of jurisdiction.—Writ annulled.

All JUSTICES concur except PETERSON, J., who takes no part.