87 697
101 471

## JESSE WRIGHT, Appellee, v. W. S. EVERETT, Appellant.

1. **Landlord and Tenant**: DEFAULT OF LESSEE: EVICTION: DAMAGES. Where a farm lease required the lessee to cultivate the farm, harvest all crops, and give as rental two-fifths of the grain in crib, and two-fifths of the hay in stack on the first day of March in each year, and provided that the lessor might re-enter the premises in case of the default of the lessee on any covenant therein, and the lessee failing to properly cultivate said farm the first year of said lease, and, being without teams for such purpose, the lessor served notice upon the lessee in the January following to quit, and in the following spring entered upon said farm, and proceeded to cultivate the same, without objection from the lessee, who soon afterwards quit without force being used to eject him, *held*, that the possession taken by the lessor was not wrongful, and that the lessee was not entitled to damages therefor.

2. **Practice in Supreme Court**: RECORD: BILL OF EXCEPTIONS. Where the evidence in a law action is taken down by a shorthand reporter, and made of record by a skeleton bill of exceptions, which properly identifies every item of evidence, so that the clerk of the court is enabled to make up his transcript with certainty, the record will be deemed sufficient upon appeal.

*Appeal from Monona District Court.*—HON. GEORGE W. WAKEFIELD, Judge.

WEDNESDAY, MAY 10, 1893.

THIS is an action between a farm tenant and his landlord. The plaintiff and another rented a farm of the defendant for the years 1888, 1889, and 1890.. The plaintiff's partner in the enterprise was one Collins. The farm was cultivated by the plaintiff and Collins in the year 1888. In January, 1889, the defendant gave Collins and the plaintiff notice to quit the premises, and the defendant, while the said tenants yet occupied the house on the land, went upon the premises and commenced farming operations in March, 1889, and after a time the plaintiff and Collins quit the possession

of the house. The plaintiff claims that Collins assigned to him all claims which he had against the defendant, growing out of the lease of the land, and this suit was brought on five counts or causes of action, which included a cause of action for alleged malicious prosecution. The defendant met these claims by denials, and he also set up a counterclaim for damages for failure to properly cultivate the land for the year 1888, and for boarding, wood, hay, and other items, including a balance for some seventy-eight dollars on a promissory note. There was a trial by jury, and separate findings were made upon each cause of action and upon the counterclaim. A motion to set aside the counterclaim was overruled, and judgment was entered thereon. The defendant appeals.—*Reversed.*

*Wright & Hubbard,* for appellant.

*McMillan & Kindall,* for appellee.

Rothrock, J.—I. The first cause of action was for work and labor on the farm, in ditching, shingling a house, and making a cave on the farm. The jury found that there was no merit in this claim. The second count was for work and labor during the years 1887 and 1888, part of it being done on the leased farm. The jury found for the plaintiff on this count in the sum of thirty-seven dollars and seventeen cents. The amount claimed was one hundred and three dollars and seventy-five cents. The third claim was for the alleged wrongful, unlawful and malicious seizure of certain personal property of the plaintiff. The evidence shows that the seizure of this property was made under a chattel mortgage, and the jury found that it was a rightful seizure.

1. Landlord and tenant: eviction: ejectment; damages.

The fourth count was for damages for forcibly and unlawfully taking possession of the said farm while the plaintiff and Collins were rightfully in the possession

thereof under their lease, and thereby depriving them of the profits and benefits arising from its cultivation for the years 1889 and 1890. The averment setting forth this alleged wrong was in these words: "That, notwithstanding said lease and its covenants, the defendant, about March 1, 1889, by force, and unlawfully, and against the protest of said lessees, did take forcible and undue possession of said premises, and forbid and prevent the plaintiff from cultivating said land for the balance of the term; that the value of the use of said premises for the unexpired term was and is eight hundred dollars." The jury found for the plaintiff, on this count, in the sum of six hundred and forty-seven dollars and ten cents. On the fifth count, for the alleged malicious prosecution, the finding was two hundred and fifty dollars for the plaintiff. On the defendant's counterclaim the verdict was for the sum of two hundred and twenty-four dollars and twenty-nine cents in favor of the defendant. The findings of the jury indicate that a large part of the claims preferred by the plaintiff were unfounded. Indeed, the very nature of many of the charges indicates that they have no merit. No complaint is made of the special finding that the plaintiff is entitled to recover the sum of two hundred and fifty dollars for the alleged malicious prosecution, nor for the thirty-seven dollars and seventeen cents allowed for work and labor; and the defendant does not claim that he should have been awarded a larger amount on his counterclaim.

The sole ground of complaint is that the verdict, so far as it awards six hundred and forty-seven dollars and ten cents to the plaintiff for the alleged wrongful taking possession of the farm, is not supported by the evidence. The lease required the lessees "to plow, plant, sow, properly work, and harvest all crops grown on the premises, in good and proper season, giving no preference to harvesting and storing their shares, to

the detriment of the first party, and give as rental two-fifths of the grain in the crib, two-fifths of the hay in stack, on March 1 in each year; said first party to keep fences and buildings in good repair, second party to haul out all the manure they can, and all the stock to run in the field of both parties after crops are gathered, until March 1 of each year." It is further provided in the lease that, if the lessees defaulted in any covenant therein, it should be lawful for the lessor to re-enter the premises, and that the lessees should surrender the same.

There is strong evidence in the case that there was a signal failure, on the part of the lessees, to properly cultivate the farm and harvest the crops for the year 1888. The defendant had a chattel mortgage upon the property of the lessees used in farming the land. The mortgage was foreclosed in the usual manner, and on the fourteenth day of January, 1889, the property was sold to satisfy the mortgage. This sale was not wrongful. The third count of the petition is a claim for damages for seizing the property and foreclosing the mortgage, and the jury rightfully found that the plaintiff was not entitled to damages therefor. The plaintiffs were then on the land without teams to cultivate it. On the fourteenth day of January, 1889, the defendant gave them written notice to quit the farm. They made no response to this notice, except that the plaintiff said to the person who served the notice that he (plaintiff) calculated to stay there. When the proper time arrived to commence spring work on the farm, the defendant commenced operations thereon, and there is not one word in evidence to the effect that any objection was made by the plaintiff. He testified, in his examination as a witness on that subject, as follows: "Defendant gave notice to quit the premises January 14, and took possession in March, 1889. He went in and went to work. I was living there at the time, and making it

my home. I was working at a neighbor's, and home nights. I lived on the land there under the lease. He went in and knocked down the stables, and commenced to farm. I never permitted him to go there. I remained there until March some time, and Collins also. The defendant did not use any force. He went in and took possession and began to cultivate it, and I quit. There was no force used to eject me. I told the man that served the notice on me that I calculated to stay there. I did not stay, but left."

It appears to us that there was no evidence authorizing a finding that the possession was taken wrongfully. The defendant was under no obligation to allow the farm to lie without cultivation, and, under the lease, the lessees had no right to sublet it without the consent of the defendant; and the lessees had no means of farming it for the year 1889. The verdict of the jury was without support in the evidence, for the further reason that there was really no competent evidence of the value of the use of the farm to a tenant under this lease. The lease required the tenant to give two-fifths of the crops raised to the defendant as a rent. The evidence in relation to the value of the use did not go to the real question. Most of it was based on the rental value of the land. The true inquiry was, what was a farm worth to a tenant after paying the rent? Or, in other words, if the lessees had sold or assigned their lease, what was its value to the assignee, taking into account the rent required to be paid? As no complaint is made as to any other finding of the jury, the judgment will be affirmed in all respects, excepting as to the amount of six hundred and forty-seven dollars and ten cents. As to that item the case is reversed, and remanded for a new trial.

II. A question is made involving the insufficiency of the record in this court. We are asked to strike the

evidence from the abstract, on the ground that it has not been properly identified and preserved by bill of exceptions, or otherwise. We have examined this question, and our conclusion is that the motion to strike is not well taken. This is an action at law. The evidence was taken by a shorthand reporter. There was a skeleton bill of exceptions, which properly identified every item of evidence, so that the clerk of the court was enabled to make up his transcript with certainty. It is not necessary that we should elaborate our decision on this question. REVERSED.

*2. PRACTICE in supreme court: record: bill of exceptions.*