T. H. BOYER v. THE COMMERCIAL BUILDING INVESTMENT COMPANY *et al.,* Appellants.

**False Representations:**   LANDLORD AND TENANT.   Prior to a lease, the tenant and the landlord's agent inspected the premises; and the latter, in reply to objections as to the floor, and the light, represented that they would be all right, and when certain partitions were removed, the light would be sufficient and the room comfortable.   *Held,* that such statements being promissory, and opinions on which the tenant had no right to rely, were insufficient to sustain a charge of false representation in procuring the lease.

LANDLORD AND TENANT:   *Covenant of quiet enjoyment.*   A tenant whose enjoyment and use of the premises is interfered with by the landlords operating boilers in the basement below, making the floor and walls uncomfortable and unhealthy, may recover damages for breach of covenant of quiet enjoyment, irrespective of misrepresentations in making the lease as to the rooms being comfortable and suitable for the tenant's business.

**Oral Demurrer:**   An objection to evidence because no cause of action is stated in the petition, being an oral demurrer, may be disregarded.

**Waiver by Requesting Instruction:**   A defendant does not waive his right to object to the insufficiency of the testimony to sustain an

3  issue by asking an instruction thereon, where he was informed that the issue would be submitted to the jury, notwithstanding his protest.

SAME.  There is no implied warranty by a lessor that the premises 2  are fit for occupation or suitable for the purpose to which lessee intends to put them.

*Appeal from Woodbury District Court.*—HON. J. F. OLIVER, Judge.

FRIDAY, FEBRUARY 2, 1900.

PLAINTIFF leased from defendant corporation a store-room for merchant-tailoring business in a large building, for a term of three years, from May 8, 1893. He went into possession, and this action is to recover damages because of the condition of the property, as hereinafter stated. It is charged that prior to the execution of the lease, defendants had constructed and maintained a furnace, boilers, and pipes in the basement of the building, directly under the room leased to plaintiff, and that there was a large chimney between said room and the room adjoining, and that there were certain steam pipes running up through the room leased by him; that the basement was negligently constructed, in that it had no doors, windows, or openings on the east, north, and west sides, and there was therefore no means of escape for steam or hot air. Plaintiff alleges that he did not know of this condition when he made the lease, and could not, with reasonable care, have discovered it. Plaintiff further charges that defendant used said boilers, furnace, pipes, and chim-ney for the purpose of running an elevator in said building and for heating the building; that the condition of the basement so heated during the summer season rendered the floor and walls of the storeroom very warm, making the atmosphere therein sultry, disagreeable, and unhealthy. Damages are asked in the difference between what plaintiff agreed to and did pay, and what the use of the room was actually worth; plaintiff having retained it during the term of the lease. After plaintiff's evidence was all in, he

amended his petition, claiming that defendant affirmatively and falsely represented that the room was cool and comfortable, and all right for plaintiff's business; that plaintiff relied on these statements in taking his lease. The answer put in issue the various charges. There was a trial to jury. Verdict and judgment for plaintiff. Defendants appeal.— *Reversed.*

*Strong & Owen* for appellant.

*T. F. Bevington* for appellee.

WATERMAN, J.—There was a demurrer to the first petition, which was overruled. No error is assigned upon this ruling. When the case came on for trial, defendants objected to the introduction of any evidence, because no cause of action was stated in the petition. This objection was entered of record and overruled.

The first assignment of error is based upon this action of the court. This sort of oral demurrer has no place in our practice, and we think the trial court was fully justified in so disposing of it.

II. The general rule is that there is no implied warranty on the part of a lessor that the premises are fit for occupation, or suitable for the purpose to which the lessee intends putting them. 2 Sutherland, Damages, 126; 1 Taylor, Landlord & Tenant, 382.

III. There are exceptions to this rule, but we need not consider them, for this case was submitted to the jury on the theory that defendants were liable only upon proof of affirmative false representations made by them. The ninth instruction asked by defendants and given by the court is as follows: "You are instructed that, before plaintiff can recover in this action, he must establish by a preponderance of the evidence: (1) That the steam-heating plant, pumps, boilers, and furnace complained of were constructed and operated in an unskillful and negligent manner in regard to

proper ventilation, and that on account of such negligent
construction or operation the storeroom occupied by the
plaintiff was rendered overheated and unfit for occupancy.
(2) That the defendant, through its agent, Feldenheimer,
misrepresented the condition of the room in question to the
plaintiff; that the said Feldenheimer knew his representa-
tions to be false when he made them, and that he intended
to deceive the plaintiff, and caused him to act as he did act
to his injury." It is true that in another instruction the
trial court mentioned the fact of concealment as an element
of the case, but the jury was fully warranted in concluding
from the paragraph just quoted that a verdict for plaintiff
could be founded upon affirmative acts of fraud alone. This
instruction eliminates from the case every question save that
of the false representations made by defendants' agent, and
the injury to plaintiff. Defendants' counsel had objected
to the filing of the amendment setting up these representa-
tions. They had objected to all the evidence offered to sustain
them, and at the close of plaintiff's case asked that a ver-
dict be directed for defendants on the ground, among others,
that the evidence failed to disclose any fraud on
defendant's part. This motion was overruled. We
do not think, under the circumstances, defendants
waived their right to object to the insufficiency of the testi-
mony to sustain the charge of fraud because they asked an
instruction relating to that issue; for they had already been
informed, by the court's rulings, and by the instructions given
on its own motion, that notwithstanding their protest that
issue was to be sent to the jury. We have then to consider
the sufficiency of the testimony to sustain the charge of false
representations by the agent, Feldenheimer. We may
premise what we have to say on this point by stating that
the evidence tends to show that the operation of the furnace
rendered the room hot, uncomfortable, and to some extent
unhealthy, during the plaintiff's occupancy. Prior to
making the lease, plaintiff went with Feldenheimer
to see the room. They went into it together. At this

time the rear third of the room was partitioned off. The partition was of boards for ten or twelve feet above the floor, and above that, to the ceiling, it was of glass. The room had been previously used as a restaurant, and some things connected with that business had been left in it. A large ice chest nearly covered one of the back windows, and the other window was very dirty. A brick oven stood upon the floor. It is necessary that this condition be understood, in order to appreciate the meaning of what was said. We quote now from plaintiff's evidence as to what was said by Feldenheimer: "At first I asked him in regard to the floor, on which they had built a brick oven, and what the condition of the floor would be when they took that oven out; and he promised that it would be all right in every particular, and he would give me his word that the room would be all right in every particular. I spoke about its being dark in the room, and he assured me that when the partitions were taken out it would be a fine light, comfortable store room, and he gave me his word for that. When I said that I was afraid that there would be a dark place for the cutter— Having had trouble before with light, I said, that I was afraid it would be dark, and that the fact of that large building ('a building in the rear') being up back there shut off some of the light and air; and he said that it would be light enough when the walls were whitewashed, and a nice, cool, comfortable place, and I could take his word for it." This question was also asked plaintiff: "What, if anything, did Feldenheimer say to you on the subject of assuring you that you could rely upon what he said about the room being made comfortable and cool?" The answer was: "He said that I did not want to miss the opportunity to get the room, now that it was vacant; that it would be the best move I ever made in my life, and he would guaranty that it would be put in first-class condition, and make me a first-class room in every respect; that I did not want to miss the opportunity to get it, and he would give me his word it would be all right in every respect." A part of this answer was stricken

out on defendant's motion, but we give it entire, as it shows better the character of the representations of which plaintiff complains. It is apparent from reading the statements made that what was said had no reference to any change in the construction of the building. The parties were talking about what they could and did see of the condition of the room, and much of what Feldenheimer said was mere matter of opinion, upon which plaintiff had no right to rely. Plaintiff at this time knew nothing of the location or construction of the furnace. The whole of these representations, too, were of a promissory nature. But the chief defect in plaintiff's case, as presented, is not to be found in either of these matters. There is no well-grounded complaint here of the room itself. That was as represented when plaintiff entered into possession. The real basis of plaintiff's claim is in the acts of defendants after he went into possession. Stripped of some verbiage, we find that the ground of the action is that defendants by their acts interfered with plaintiff's enjoyment of the leased premises. If there is any cause of action here, it is for this, and for this alone. It is immaterial as to how the basement was constructed. Whether it was properly or improperly built makes no difference. Did the defendants, after plaintiff took possession, do anything to disturb his possession, or interfere with his enjoyment and use of the premises? This is the one question to answer, and upon the response depends their liability. *McDowell v. Hyman,* 117 Cal. 67 (48 Pac. Rep. 984); *Trust Co. v. Palmer,* 171 Ill. Sup. 383 (49 N. E. Rep. 553; *West Chicago St. R. Co. v. Morrison, Adams & Allen Co.,* 160 Ill. Sup. 288 (43 N. E. Rep. 393); *Sully v. Schmitt,* 147 N. Y. App. 248 (41 N. E. Rep. 514); *Jenner v. Carpenter,* (— Tex.—) (48 S. W. Rep. 46) *Keating v. Springer,* 146 Ill. Sup. 481 (34 N. E. Rep. 805, 22 L. R. A. 544); *Boston & W. R. Co. v. Ripley,* 13 Allen, 421; *Skally v. Shute,* 132 Mass. 367; *Jackson v. Eddy,* 12 Mo. 209; *Alger v. Kennedy,* 49 Vt.

109. The landlord, without being guilty of an actual, physical disturbance of the tenant's possession, may yet do such acts as will justify the tenant in leaving the premises. If he does not leave, yet he may have an action for damages. *Keating v. Springer, supra,* and cases cited therein. There was no issue of fraud, either of misrepresentation, or, as originally charged, of concealment, to go to the jury. It may be said that the proper issue, as we have stated it, was included in the case made, and that the only effect of the charge of fraud was to increase unnecessarily the burden which the law imposed upon plaintiff, and could not have prejudiced defendants. But we think the trial of this issue was confusing. Besides this, much evidence was introduced on plaintiff's part which had no place in the case. Some of it should not have been admitted, even under the issue tried. Among other matters, a number of witnesses were introduced by him who testified to the defective construction of the basement, and also expressed opinions as to how it should have been constructed. This was improper and prejudicial. It may well be that the basement was not properly constructed, and defendants may not have been able to meet this point. This would doubtless have prejudiced their case with the jury, although the matter was wholly immaterial in the case as it should have been made. Evidence was also introduced by plaintiff to show the temperature of this room at a time long prior to his occupancy, and when the condition of the heating apparatus and the ventilation of the building were substantially different from what they were during his occupancy. If this evidence was admissible at all, it was to show notice to defendants of the defective condition in order to make out the fraudulent concealment alleged. But, under the issue which should have gone to the jury, such notice would be immaterial. Most of the matters complained of grow out of the issue of fraud. We need mention no others than those of which we have spoken, for they will not be likely to again arise.—REVERSED.

GRANGER, C. J., not sitting.