GERRIT KUIKEN et ux., appellees, v. JULIAN GARRETT et ux., appellants.

No. 47712.

(Reported in 51 N.W.2d 149)

JANUARY 8, 1952.

REHEARING DENIED MAY 9, 1952.

Johnston, Shinn & Johnston, of Knoxville, for appellants.

Johnson & Johnson, of Knoxville, for appellees.

THOMPSON, C. J.—Division I of plaintiffs' amended and substituted petition, filed May 13, 1948, alleges that they leased certain buildings and farm lands from defendants for the year from March 1, 1947 to March 1, 1948, by oral agreement; that they entered into possession; that defendants thereafter served upon plaintiffs certain notices to terminate tenancy and notices to quit, and commenced and prosecuted various forcible entry and detainer actions, amounting to a breach by defendants of the implied covenant for quiet enjoyment of the demised premises, malice being charged in the giving of said notices and the bringing of said ouster actions. Plaintiffs say they were damaged in that they lost time in attending to the notices and litigation

precipitated by defendants, and that they paid or became liable to pay attorney fees; that defendants failed to pay one half the cost of seed oats as required by the lease; and they ask exemplary damages.

In Division II plaintiffs ask the sum of $180 (reduced to a maximum of $150 in the instructions of the court) because they were entitled, under sections 562.6 and 562.7, Code of 1946, to hold over for another year after March 1, 1948, but they were evicted by defendants by the service of a notice to quit on February 26, 1948; that this notice constituted a constructive eviction, and they acted upon it and were compelled to pay rental for other premises for ten months at $15 per month.

The defendants admitted the giving of the notices, but denied malice, and averred that the plaintiffs had breached the lease in various ways, and that defendants were justified in their attempts to regain possession of their property. They also counterclaimed, asking damages for various alleged breaches of the lease by plaintiffs. The jury returned a verdict for plaintiffs for $845, and for defendants the sum of $10 upon their counterclaim. From judgment upon the verdict defendants have appealed.

Defendants' assigned errors are set out in eight major divisions. However, many of these are subdivided so that in all there are some seventy-one errors, major and minor, claimed as grounds for reversal. It is an obvious impossibility to discuss each of these within the reasonable length of an opinion. However, many of them are in effect duplications. We have considered each assignment and have discussed those which seem to have a semblance of merit. We believe that the opinion which follows gives attention to the substance of defendants' complaints.

■■ I. Defendants' first proposition relied upon for reversal, and which they argue strenuously and at length, concerns what they assert to be contradictory rulings made by two different judges of the Fifth Judicial District, of which Marion County is a part. Upon the filing of plaintiffs' first petition herein, defendants attacked it by motions to dismiss and, in the alternative, motions to strike. Judge Earl W. Vincent, before whom these motions came for determination, denied the motions to dismiss, but sustained the motions to strike. This ruling left

to plaintiffs only their claim for $25 damages because of the alleged failure of defendants to pay one half of the cost of the seed oats purchased and used by plaintiffs upon the leased ground for the year 1947.

Thereupon, plaintiffs filed an amended and substituted petition, upon which they eventually went to trial. Believing that this petition was in substance no different from the first one filed defendants again attacked by motions to dismiss and to strike, the material ground of the latter being that the second pleaded cause of action was in effect identical with the first and that the ruling thereupon had become the "law of the case", and therefore plaintiffs were not entitled to reassert the same claims. These motions came before Judge S. E. Prall, another judge of the same judicial district, and so of the Marion District Court. Judge Prall, believing that there was a substantial difference in the two petitions, considered the motions and eventually overruled them. It is apparent that, if there was in fact no material change in the allegations made in the amended and substituted petition, he was in effect overruling the decision of Judge Vincent. For the purpose of the discussion in this division we shall assume, without deciding, that this is what he did.

Defendants cite several authorities in support of their contention that Judge Prall had no legal right to change the holding of the court. One of them, Taylor v. Grimes Canning Corp., 218 Iowa 1281, 257 N.W. 353, seems in point. It was there held that one of the judges of the Polk District Court had no right to change, and in effect overrule, a prior determination of another judge of the same court. See page 1286. The holding is much weakened by the lack of supporting authority. Only one case, Farmers Union Exchange v. Iowa Adjustment Co., 201 Iowa 78, 80, 203 N.W. 283, is cited. It is readily apparent, however, that this does not support the Taylor case. It holds only that the district court of Marshall County could not enjoin the enforcement of a judgment rendered in the municipal court of the city of Marshalltown. These were courts of concurrent jurisdiction, and, since the judgment of the municipal court was not entirely void, another court had no jurisdiction to examine its validity. The situation is in no way comparable to that existing where the same court, whether by the same or a different judge,

examines and passes upon its own rulings at any time prior to final judgment.

It has often been held that, when a demurrer, motion to dismiss or motion to strike has been upheld as against a pleading, and the pleader attempts to plead over, but fails to assert any new or different grounds for relief, a motion to strike is proper; and if such motion is sustained, that no error can be predicated upon the ruling. The error, if one was committed, was in the first ruling, and appeal must be taken therefrom. It was also held, under our former practice, that pleading over after an adverse ruling waived the error. (This has been changed by our present Rules of Civil Procedure, rule 331(b).) Authorities to the effect that a motion to strike is proper where the second pleading is but a repetition of the first, cited and relied upon by defendants here, are Weimer v. Lueck, 234 Iowa 1231, 15 N.W.2d 291; Farmers Union Exchange v. Iowa Adjustment Co., supra; Simmons v. Western Life Indemnity Co., 171 Iowa 429, 154 N.W. 166; Swartzendruber v. Polke, 205 Iowa 382, 218 N.W. 62. They decide the right of the court to strike a second pleading which does not materially alter the allegations of the first; but, except for Taylor v. Grimes Canning Corp., supra, they do not reach the authority of the court to change its ruling if it conceives that its first decision was in error. Ontjes v. McNider, 218 Iowa 1356, 1361, 256 N.W. 277, relied upon by defendants, holds only that the original rulings of the court were correct and since the proposed substituted petition was not different in substance, it should have been followed and the petition stricken. It is important to note, also, that many of the cases cited by defendants were decided under the rule that pleading over after an adverse ruling on a motion waived the error. This is no longer true under rule 331(b), above-cited. Pleading over does not now waive error. The true rule, we think, is expressed in Richman v. Supervisors of Muscatine County, 77 Iowa 513, 524, 42 N.W. 422, 426, 4 L. R. A. 445, 14 Am. St. Rep. 308. The situation there was identical with that in the case at bar, that is, after a change in the personnel of the court a different ruling was made. We said: *"We think the change of judges makes no difference. It is the same court. We are not prepared to hold that if, during the trial of the issues of an*

*action, a court becomes convinced of an error he may not correct it."* (Italics supplied.)

To the same effect is Darling v. Blazek, 142 Iowa 355, 358, 120 N.W. 961, 962. There, in response to the argument that the first ruling upon a demurrer, which was sustained, became the law of the case, Justice Weaver, for this court, said: "Parties to a litigation have no vested right in the court's mistakes to prevent their correction at any time before final judgment is entered."

In Simmons v. Western Life Indemnity Co., supra, a case cited and urged by defendants, is set out the proper qualification of the doctrine contended for by them. It is there said at page 434 of 171 Iowa, page 167 of 154 N.W.: "* * * such rulings, *until recalled or set aside by the court,* became the law of the case * * *." (Italics supplied.)

It is our conclusion that Judge Vincent's ruling did not become the law of the case so as to preclude either himself or another judge of the same court from changing it before final judgment. The decision in each case was that of the Marion District Court rather than of any individual judge thereof, and could be corrected by the court at any time before entry of final judgment. As Justice Weaver said, the defendants had no vested right to require the court to perpetuate its mistake.

In so far as Taylor v. Grimes Canning Corp., supra, is in conflict with the holding expressed in this division of the opinion it is overruled.

II. By motions attacking the pleadings, objections to evidence, exceptions to instructions, and motions following the verdict, defendants raise the question of the right of plaintiffs to recover damages for wrongful eviction, as alleged in Count I of their petition, when they did not remove from the premises during the term of the lease. It will be noted that in spite of the many notices and ouster suits with which defendants deluged them during the latter part of the year 1947 and the early months of the year 1948, the plaintiffs remained in possession, uneasy though it may have been, until March 1 of the latter year. This was the original termination date of their lease.

It is the law in Iowa that a tenant is evicted when he leaves the premises during the term in response to a notice to

quit. Tarpy v. Blume, 101 Iowa 469, 471, 70 N.W. 620; Eggers v. Paustian, 190 Iowa 638, 644, 645, 180 N.W. 873. This rule applies to Count II of plaintiffs' petition, in which they claim damages for their eviction by the notice to quit February 26, 1948, which they say deprived them of their rights to hold over for another year. This will be discussed in a later division. It is evident that they did, however, retain possession during the year from March 1, 1947 to February 29, 1948, inclusive; and since the damages claimed in Count I all relate to this time we must determine whether they may have a recovery under those circumstances.

The trial court, in Instruction No. 6, told the jury that, before plaintiffs could recover under Division I of their petition they must establish by a preponderance of the evidence:

"That the defendants commencing on or about October 30, 1947, caused to be served upon the plaintiffs certain notices to quit and certain notices for the termination and cancellation of the oral lease and also started certain legal proceedings to gain possession of the real estate involved herein, and that in doing so said defendants acted maliciously, with intent to disturb and annoy the plaintiffs in their possession and quiet enjoyment of said real estate."

In giving this instruction the court perhaps placed an undue burden upon the plaintiffs, since it interjected the element of malice in addition to that of wrongful interference with their peaceable possession. But the plaintiffs are not complaining. We hold that it is not always that a tenant in possession can be denied the right to damages because he remains upon the realty; but that if the landlord harasses and annoys him and disturbs his quiet enjoyment, by a systematic course of oppression or interference, just compensation may be required. This is true, even though the tenant's action is founded, as we think it is here, on contract rather than in tort. It was the law of the case, in accordance with the court's instructions, that malice must be found. There are Iowa cases which hold, without discussing the question of malice, that a tenant who is disturbed in his possession may, without surrendering the premises, recover damages for breach of the covenant for quiet enjoyment. Harmont v. Sullivan, 128

Iowa 309, 103 N.W. 951, involved such a situation. While Sullivan, the tenant, was in possession during the term of his lease, the plaintiff, the landlord, in confederation with others harassed and disturbed him. He remained on the land until the expiration of his lease and, when sued for the rent which had accrued, counterclaimed for damages suffered. He was permitted to recover. The case seems directly in point. In Boyer v. The Commercial Bldg. Inv. Co., 110 Iowa 491, 497, 81 N.W. 720, 722, we said: "The landlord, without being guilty of an actual, physical disturbance of the tenant's possession, may yet do such acts as will justify the tenant in leaving the premises. *If he does not leave, yet he may have an action for damages.*" (Italics supplied.) See also Kane v. Mink, 64 Iowa 84, 19 N.W. 852. The law seems to be definitely settled in Iowa in opposition to defendants' contention at this point. They cite Eggers v. Mitchem, 240 Iowa 1199, 38 N.W.2d 591, but it gives them no support. There a purchaser of land was sued by a claimant of a superior title to a part of the real estate. Upon trial the claim was held wholly unfounded. The purchaser, however, attempted to hold his title-warranting grantors to pay his costs and expenses, including attorney fees, incurred in his successful defense of his title. The case holds only that the warranty not having been breached, there could be no recovery. It is not in point here. Since, as we have seen, the Iowa court has held squarely in opposition to defendants' contention, the cases from other jurisdictions which they cite are not helpful to them. However, some of them, such as McCullough v. Cuthbert, 46 Idaho 294, 301, 267 P. 828, 830, and International Trust Co. v. Schumann, 158 Mass. 287, 291, 33 N.E. 509, 510, under the circumstances prevailing here, where the trial court made malice an essential to plaintiffs' recovery, do not aid defendants in any event. In the McCullough case the court made its holding apply only to a landlord who *"without malice and with probable cause"* brings an action for possession of the premises. In the International Trust Company case it is said: "The process was not a *malicious* suit * * *." In Psihozios v. Humberg, 80 Cal. App.2d 215, 220, 181 P.2d 699, 703, we find this: "* * * *and so long as the landlord acts in good faith* in suing to obtain a decree of ouster * * * he is not liable to the tenant in damages." (Italics supplied

in each instance.) The implication in each of these cases is that, if the landlord's action is not brought in good faith an action will lie.

III. The question of malice then becomes all-important. Defendants complain that the court did not instruct upon want of probable cause. But we think that under the circumstances prevailing here it is inseparable from malice; and further, that the matter was covered by the final paragraph of Instruction No. 8, in which the jurors were told that they might consider whether the defendants were justified in bringing the actions of forcible entry and detainer, in determining whether they acted with malice. This clearly introduced and instructed upon the question of lack of probable cause.

We think there was sufficient evidence of malice to require submission to the jury. During the period of plaintiffs' occupancy of the premises defendants caused to be served upon them ten separate notices, as follows:

1. Notice that tenancy would terminate December 1, 1947, sent by registered mail on October 29, 1947.

2. Three-day notice to quit, manner of service not shown in the record, served on or about November 29, 1947.

3. Original notice of ouster suit in J. P. court, served by deputy sheriff December 2, 1947.

4. Original notice of ouster suit in district court, served by deputy sheriff December 24, 1947.

5. Notice of rent due, served by the Garretts in the Kuiken home on January 5, 1948.

6. "Notice of rescission and termination of oral contracts", served by the Garretts in the Kuiken home on January 5, 1948.

7. Three-day notice to quit, served by the Garretts in the Kuiken home on January 5, 1948.

8. Three-day notice to quit, served by deputy sheriff on January 22, 1948.

9. Original notice of ouster suit in district court, served January 30, 1948, presumably by the deputy sheriff.

10. Three-day notice to quit, served on February 26, 1948, presumably by the deputy sheriff.

Defendants filed four verified petitions in forcible entry and detainer. Two of them were in an action commenced and

tried in justice court, the first being filed on December 2, 1947. After the cause was tried and defendants (as plaintiffs in that action) were defeated by a jury verdict, they filed, on December 24, 1947, an amended and substituted petition in the same cause upon appeal to the district court. On December 30, 1947, this was dismissed upon motion and after hearing. On January 8, 1948, they filed their petition in the Marion District Court. This was dismissed by them on January 26, 1948, and on January 30 next they filed another action in the district court. This went to trial upon February 17 and 18, 1948, resulting, on February 24, in a decree dismissing the case.

The first notice served upon these plaintiffs, on October 30, 1947, by registered mail, advised them that their term would end on December 1, 1947. This was followed, under date of November 28, 1947, by a notice to quit. On December 2, 1947, came the first petition, in justice court. Up to this point defendants had apparently been acting upon the theory that plaintiffs' lease was for less than forty acres, and so brought them under the provisions of sections 562.5 and 562.6, Code of 1946. Any controversy as to the amount of land involved was adjudicated by the trial court in its decree of February 24, 1948, where it was held that all of the land was included in one lease and totalled about sixty-five acres.

On December 24, 1947, defendants filed their amended and substituted petition in the Marion District Court upon appeal from the adverse finding of the jury as above noted. Here, however, they alleged different grounds. They said that plaintiff Gerrit Kuiken had agreed that he would repair, maintain and care for fences and other property of defendants upon the demised premises, and had been promised compensation therefor; but that plaintiffs had failed to carry out this agreement. It was further claimed that plaintiffs were guilty of gross negligence in performance of their farming operations.

Upon the dismissal of this appeal for technical reasons the defendants commenced an original action in equity in the district court. This was preceded, on January 5, 1948, by a notice to quit; and on the same date, by a "notice of rescission and termination of oral contracts." This, it was stated, was given "on account of your failure and refusal to pay rent as to said prem-

ises and your failure and refusal to farm said land, as provided and required by said oral contracts." The petition in the forcible entry and detainer action last above referred to, filed on January 8, 1948, alleged the leasing of the premises to plaintiffs, that they had agreed to farm said land in accordance with good farming practice and to put all of said land into grains and clover and alfalfa, and that defendants were to receive one half of the crops as rental. The petition then alleged the failure of the plaintiffs to farm the forty-nine-acre tract; that the total rent paid was only about ninety bushels of corn; that the reasonable value of the buildings, garden and yard leased to plaintiffs was $20 per month, which was unpaid; and because of the defaults named defendants were entitled to possession of the premises. This petition was dismissed by defendants on January 26, 1948.

On January 22, 1948, defendants caused to be served upon plaintiffs another notice to quit. The reason for demanding possession was given in this notice, "that you have failed to perform the services in feeding and caring for cattle which you agreed to perform as rent for said buildings." This was the ground alleged, in substance, in the petition for forcible entry and detainer filed on January 30, 1948, and which went to trial on February 17 and 18 and was dismissed by the trial court on the later date, upon the merits.

There is also evidence that both defendants called upon plaintiffs at one time with a demand for $200 cash, which they claimed as the actual rental value of the premises, although there was no such agreement in the lease. It should also be noted that they filed the last forcible entry and detainer action on January 30, 1948, and forced it to trial on February 17 of the same year, although plaintiffs' term ended on February 29, and defendants have at all times claimed that plaintiffs were not entitled to hold over thereafter and that they had, in fact, waived any such right.

It will be seen that not only did the defendants herein serve or cause to be served ten different notices, and that they filed four different petitions in three different actions of ouster, but that the grounds alleged as giving them a right to possession varied greatly. It is true that a landlord has a right to attempt to oust his tenant, *if he thinks he has just grounds therefor;*

and in such case he is not to be held liable for damages if he fails. This plaintiffs concede. But the qualification italicized above is important. If he serves repeated notices, and institutes repeated actions, alleging different grounds, and fails to prove any of them upon trial, we think a fair inference of malice may be drawn by a jury. Whether defendants were actually malicious is not for us to determine; we hold only that there was a jury question.

IV. Defendants urge that ordinarily exemplary or punitive damages may not be recovered in actions for breach of contract. We agree with defendants that plaintiffs' action here is such; they planted themselves squarely upon the contract theory in paragraph 20 of their amended and substituted petition, in which they say: "That this action is based upon breaches of contract, including breaches of the covenant for quiet enjoyment * * * and is not an action for malicious prosecution." Plaintiffs concede that the general rule is as claimed by defendants. But they say that the error, if such there was, is not available to defendants because they failed to raise it by any proper objection, motion or otherwise, upon the trial below. We are forced to conclude that the point is well taken. We find nothing in the record which shows that the trial court was advised that defendants were claiming that exemplary damages are not allowable in an action upon contract. We have examined the motions to dismiss and to strike from the amended and substituted petition, the motion to withdraw from the jury, and the exceptions to Instruction No. 9, which is the only one dealing with exemplary damages. The motion to strike included an attempt to strike the allegation of malice as a legal conclusion, which was not good, since such conclusions are proper where supported by proper allegations of fact. Mauser v. Page, Iowa, 8 N.W.2d 246, 247, and many other authorities support this rule. The motion was therefore properly overruled, since it sought to eliminate the entire paragraph. Defendants were at all points directing their attention to the question of malice rather than that of exemplary damages, and nowhere presented their present alleged error fairly to the trial court.

Nor do we think their position sound under the circumstances prevailing here. There are exceptions to the general rule,

800

even in contract actions. It is said in 15 Am. Jur., Damages, section 273, page 709:

█ "This rule does not obtain, however, in those exceptional cases where the breach amounts to an independent, wilful tort, in which event exemplary damages may be recovered under proper allegations of malice, wantonness, or oppression * * *. In some states they are recoverable for breach of a contract where there has been some intentional wrong, insult, abuse, harshness, or such gross neglect of duty as to evince reckless indifference of the rights of others or where, and only where, the breach is accompanied with a fraudulent act."

See also Welborn v. Dixon, 70 S. C. 108, 49 S.E. 232, 3 Ann. Cas. 407; Southwestern Gas & Elec. Co. v. Stanley, 123 Tex. 157, 70 S.W.2d 413; Burrus v. Nevada-California-Oregon Ry., 38 Nev. 156, 145 P. 926, L. R. A. 1917D 750; Forrester v. Southern Pacific Co., 36 Nev. 247, 134 P. 753, 136 P. 705, 48 L. R. A., N. S., 1.

█ We have held above that the element of malice was properly submitted to the jury in this case, and it must have been found to be present because otherwise there could have been no verdict for the plaintiffs, except for the item of $25 for seed oats. In this light the conduct of the defendants must have been held to be oppressive and tinctured with legal malice. Exemplary damages are not an allowance to the plaintiff as compensation for actual injuries, but only, under the general rule, as a punishment to the offender, and as an example to others that such oppressive or malicious conduct has its additional penalties. We said in Stricklen v. Pearson Constr. Co., 185 Iowa 95, 97, 169 N.W. 628, that if the plaintiff is awarded damages above the amount needed for his actual compensation it is because *"the wrongful act of which he complains has been done in malice, or in such high-handed or reckless disregard of duty that the award is thus increased, by way of punishment or example."* (Italics supplied.) The element of malice, when present, has generally been regarded as a sound reason for assessing additional punishment against the offender, and we think it furnishes such basis here.

█ V. As to the allowance of special damages, specifically loss of time and attorney fees, Harmont v. Sullivan, supra, deter-

mines the issue in favor of plaintiffs. Here we said at page 318 of 128 Iowa, page 954 of 103 N.W.:

"Defendant herein was compelled to bring action to protect his possession, and, if the jury found there was such connivance [between plaintiff and other parties who disturbed defendant's possession], defendant was entitled to recover the costs and expenses, including attorney's fees, reasonably expended or incurred as damages for breach of the implied covenant of seisin."

In the Harmont case, as in the case at bar, the tenant did not surrender possession until the end of his term, but he was permitted to recover damages and expenses brought about by a wrongful interference with his right of quiet enjoyment. See also Eggers v. Mitchem, supra; Dilly v. Paynsville Land Co., 173 Iowa 536, 545, 155 N.W. 971; Foshay v. Shafer, 116 Iowa 302, 89 N.W. 1106; Adair v. Bogle, 20 Iowa 238; 14 Am. Jur., Covenants, Conditions, etc., section 159, page 586.

Defendants make some complaint also that plaintiff Gerrit Kuiken was allowed to recover for loss of time while engaged in work away from the farm. However, he testified, without objection, that the total reasonable value of the loss of time of himself and wife caused by the notices and litigation was the sum of $200. We think there was a jury question.

VI. Defendants assign error upon the refusal of the court to permit cross-examination and direct examination as to the terms of the lease; and further, upon the court's holding that the question of the alleged failure of plaintiffs to feed hay to defendants' cattle had been adjudicated, and hence could not be inquired into in the case at bar.

In the final forcible entry and detainer action, defendants (then plaintiffs) made claim that the present plaintiffs were holding possession wrongfully because they had breached the lease by failing to feed the cattle as they had agreed. The trial court there made a finding as to the terms of the lease, and held that all of the land had been rented to plaintiffs at one time and by one oral agreement; and further, that this contract contained no requirement for feeding of the cattle. Under this state of the record we are of the opinion that the court was correct in finding that these matters had been adjudicated against de-

fendants. The provisions of the lease were in issue in the forcible entry and detainer action, and the fact questions were decided. Defendants cannot be permitted to litigate an alleged breach of the lease in a forcible entry and detainer action, and after an adverse holding to bring their action for damages for the same breach. They had nothing upon which they were entitled to go to the jury upon 'this question. They argue that because plaintiffs removed from the demised land on March 1, 1948, and the forcible entry action was decided on February 18 of the same year defendants could not appeal from the decree therein, the question being moot. Granting this, the court's holding is still a final adjudication against them, which they were not entitled to litigate further, under a different guise.

Defendants also say that the judgment was not binding upon Julian Garrett, because he was not a party to the forcible entry action. Defendants are husband and wife. Julian Garrett testified: "We have around 700 acres in the vicinity of Fifield. My wife holds the legal title. I look after the management of the 700 acres."

Mrs. Garrett said: "The legal title to the land is in my name. *Both of us have the investment in it. We both own the claims that are made in this càse."* (Italics supplied.)

Julian Garrett handled the matters involved in leasing the land to plaintiffs, and he was a party to the first two actions brought and signed most of the notices served upon plaintiffs. In fact, the entire record shows that Julian Garrett was the principal actor in all of the transactions involved. He cannot now be heard to say that he was belaboring plaintiffs over the shoulders of the other defendant, but is not bound by what happened as a result of his activities. He is within the rule laid down in Souffront v. La Compagnie des Sucreries de Porto Rico, 217 U. S. 475, 487, 30 S. Ct. 608, 612, 54 L. Ed. 846, 851, where it was said:

"The case is within the principle that one who prosecutes or defends a suit in the name of another to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own, and who does this openly to the knowledge of the opposing party, is as much bound by the judgment and as fully entitled to avail himself of it as

an estoppel against an adverse party, as he would be if he had been a party to the record."

See also Hoskins v. Hotel Randolph Co., 203 Iowa 1152, 211 N.W. 423, 65 A. L. R. 1125.

We said in Stoddard v. Thompson, 31 Iowa 80, 82: "One who, though not a party, defends or prosecutes an action by employing counsel, paying costs, and by doing those things which are usually done by a party, is bound by the judgment rendered therein."

To the same effect are Davis v. Milburn, 4 (Clarke) Iowa 246; McNamee v. Moreland, 26 Iowa 96; and Baxter, Reed & Co. v. Myers, 85 Iowa 328, 52 N.W. 234, 39 Am. St. Rep. 298.

VII. Complaint is made in defendants' assignment of error V that the court erred in sustaining objections to certain questions asked by their counsel. It is a sufficient answer to say that there is no showing as to what the answers would have been, had the ruling been otherwise. This court cannot, upon appeal, presume that answers would have been favorable to the aggrieved party. Litigants who feel that part of their case has been erroneously excluded must assume the burden of making an affirmative showing. This has been many times decided. See In re Estate of Heller, 233 Iowa 1356, 1362, 11 N.W.2d 586, and many cases cited therein.

The same numbered assignment of error also deals with the refusal of the court to permit an amendment to conform to proof after the evidence had been concluded. This rests largely within the discretion of the trial court, and we find no abuse in its ruling. It is urged also by plaintiffs that the matters sought to be elicited by the rejected evidence, and to be brought into the case by the proposed amendment, were res adjudicata, because of rulings and judgments in the forcible entry and detainer actions. While we are inclined to think there is merit in this contention, we find it unnecessary to so decide.

VIII. Further error is predicated upon the court's rulings which sustained objections to questions put to the defendant Julian Garrett as to his feeling toward the plaintiffs, and his motives in bringing the various ouster suits and in giving the various notices. Malice being an important part of plaintiffs' case, answers should have been permitted. Halligan v. Lone

Tree Farmers Exchange, 230 Iowa 1277, 1286, 300 N.W. 551, and authorities cited therein. But here again no offer or statement as to what the answers would have been was tendered, and there is also in evidence the testimony of the other defendant, Loyat Garrett, as to their joint reasons and motives in their various activities in attempting to oust plaintiffs from the property. No prejudicial error appears.

Further complaint is made of the admission of the testimony of L. D. Teter, the attorney who represented defendants in the trial of the justice court ouster suit. It appears that at the close of the justice court trial there was some discussion between Mr. Teter and plaintiffs' (then defendants) counsel about a settlement of all existing difficulties between the parties. The terms of the agreement reached by the attorneys were not in evidence, but it appears that they were rejected by the present defendants. Some of the testimony of this witness was admitted without objection; as to much of it the objections came in after the answer had been given, and therefore too late. Ducummon v. Johnson, 242 Iowa 488, 496, 47 N.W.2d 231, 236; Livingstone v. Dole, 184 Iowa 1340, 1343, 167 N.W. 639, 641; Marple v. Ives, 111 Iowa 602, 603, 82 N.W. 1017. We have many times said that a party may not wait until an answer is given and then lodge his objection if the answer is not satisfactory. He cannot speculate upon the advantage or disadvantage of the witness' reply to the question, without waiving his right to object. Oxford Junction Sav. Bk. v. Cook, 134 Iowa 185, 188, 111 N.W. 805; Duer v. Allen & Son, 96 Iowa 36, 64 N.W. 682; Smith v. Dawley, 92 Iowa 312, 60 N.W. 625. Jackson v. Chicago, M., St. P. & P. R. Co., 238 Iowa 1253, 1262, 1263, 30 N.W.2d 97, and cases cited; Glatstein v. Grund, 243 Iowa 541, 549, 51 N.W.2d 162, 168. As to one question where the answer preceded the objection a motion to strike was made following the objection. But here no grounds were given for the motion, unless we are to assume that they were the same as those included in the objection. Without deciding this point we think that prejudicial error would not appear from the overruling of the motion to this one answer when the preceding ones were in the record without proper objection.

We are not to be considered as holding that plaintiffs had here adopted a proper method of proving malice. No

such conclusion could fairly be drawn from the fact that defendants refused to accept an unspecified and, in this record, an unknown proposition for settlement of their difficulties with plaintiffs. It may have been an entirely unfair proposition, in spite of the agreement of their attorney. We also realize that answers sometimes come in before the opposing attorney has a fair opportunity to lodge an objection. But, under such circumstances, it is his duty to make the record so show, by stating his difficulty to the court or asking that the objection be permitted to precede the answer. This was not done here. We have no thought of criticizing the able counsel who represented the defendants. In the hurly-burly and confusion of a hotly contested jury trial it is not difficult for an attorney to overlook a matter such as this. But we must take the record as we find it.

IX. Division II of plaintiffs' petition claims damages for wrongful eviction from the premises rather than for breach of the covenant for quiet enjoyment, which was the basis for recovery asked under Division I. It alleges that plaintiffs' term, originally to terminate on March 1, 1948, was extended for another year by virtue of the provisions of sections 562.6 and 562.7, Code of 1946. Section 562.6 provides that in the case of farm leases, excepting mere croppers, the term shall continue for the following crop year upon the same terms as those of the original lease unless a written notice for termination is given by either party, when the term shall end on March 1 following. Section 562.7 defines the manner of service of the notice of termination. The material part of this section is this: "By either party sending to the other at his last known address, at least ten days before November 1, a notice by registered mail with a return receipt demanded."

Under date of October 29, 1947, defendants mailed to plaintiffs the following:

"NOTICE OF TERMINATING TENANCY TO GERRIT KUIKEN AND MRS. GERRIT KUIKEN:

"Kindly take notice that your tenancy as to land and buildings in Section Four (4) and Thirty-three (33) in Polk Township, Marion County, Iowa, said land and

buildings being the property of the undersigned, will terminate on December 1, 1947.

"Loyat Bland Garrett

"Julian Garrett."

No other written notice in any manner complying with sections 562.6 and 562.7 was given to plaintiffs, and it is evident that the one just set out did not do so. It did not profess to terminate the tenancy on March 1 next, but attempted to end it on December 1, 1947, and it was not served ten days before November 1 as required in case of mailing.

The court was justified in telling the jury that there had been no proper notice of termination of tenancy under sections 562.6 and 562.7. But we think there is a sufficient reason why plaintiffs are not entitled to recover upon the claim set out in their Division II, under this record. While they were justified in accepting the notice to quit served upon them on February 26, 1948, as a constructive eviction and in removing from the premises for that reason, it is elementary that the burden was upon them to show that they did so. They may not have intended to stay; it may have been their intention at all times to so remove. In fact, there is some evidence in the record that such was the case. In 52 C. J. S., Landlord and Tenant, section 457, pages 173, 174, it is said:

"It is not of itself sufficient that there are circumstances which would justify the tenant in abandoning the property, and that he does in fact leave; *if other considerations wholly or in part induce him to leave there is no eviction.*" (Italics supplied.)

See also Eggers v. Paustian, supra. The record here is entirely barren of any statement or showing that the plaintiffs removed because, and solely because, of the notice to quit served upon them on February 26, or because of any other act of the defendants constituting an eviction, constructive or otherwise. The point was properly raised by defendants by exceptions to instructions and in other ways.

X. The judgment upon the verdict herein was not formally entered by the clerk until March 31, 1950, although the verdict was returned on October 14, 1948. The matter com-

ing to the attention of the court about the first-named date, a judgment was entered nunc pro tunc. Defendants assert that this was error. They concede that the court's action would have been proper before the adoption of the present Rules of Civil Procedure. See Selby v. McDonald, 219 Iowa 823, 259 N.W. 485; Cox v. Southern Surety Co., 208 Iowa 1252, 226 N.W. 114. But they think that because rule 223 says that the clerk must *forthwith* enter judgment upon a verdict when it is filed, a different holding is required. The addition of the italicized word has not changed the law. We said in Cox v. Southern Surety Co., supra, approved and followed in Selby v. McDonald, supra, that it was the duty of the clerk to enter judgment *immediately* upon the filing of the verdict. There is no difference, and no change in the governing rule.

We find no error, except in the submission of the claim made in plaintiffs' Division II. Since the most that the jury could have allowed under the instructions on this item was the sum of $150, a reversal and remand of the entire case is not required. If plaintiffs shall, within thirty days from the time of the filing of this opinion, file in this court a remittitur reducing the judgment by $150, with interest thereupon from October 14, 1948, this cause will stand affirmed, with costs taxed three fourths against defendants and one fourth against plaintiffs. If such remittitur is not filed within the time limited the cause will be reversed.—Affirmed on condition.

BLISS, GARFIELD, MANTZ, OLIVER, and WENNERSTRUM, JJ., concur.

MULRONEY, J., specially concurs.

HAYS, J., takes no part.

SMITH, J., not sitting.

MULRONEY, J. (specially concurring)—I concur in all but Division I. I would affirm Judge Prall's ruling on the motion to dismiss on the ground he stated: that the amended and substituted petition contained substantially different averments. The first petition was interpreted by Judge Vincent as an action for malicious prosecution. In the second it was specifically pleaded that the action was for breach of contract including breach of the covenant for quiet enjoyment.