[No. 2031]

JOSEPH BURRUS, RESPONDENT, *v.* THE NEVADA-CALIFORNIA-OREGON RAILWAY, APPELLANT.

[145 Pac. 926]

1. COURTS—CONTRACTS FOR SPECIAL TRAIN—INTERSTATE COMMERCE —JURISDICTION OF STATE COURT.

   One contracting with a railroad company for a special train to run from a point in the state to a point in a sister state and return may sue the company in a state court for a breach of the contract, without previous application to the Interstate Commerce Commission.

2. PLEADING—AMENDMENTS—ANSWER.

   Where a railroad company, when sued for a breach of contract for a special interstate train, filed a demurrer which was overruled, and a motion to strike out parts of the complaint, which was denied, and then filed an answer, refusal to permit amendment of the answer during the trial many months after the filing of the complaint, by setting up a failure to comply with the interstate commerce act in the establishment of rates for special trains, and to plead the invalidity of the contract by reason thereof, was proper.

3. CARRIERS—BREACH OF CONTRACT—MENTAL ANGUISH.

   A railroad company, breaching its contract to furnish a special train to carry speedily for medical treatment a son of the person contracting for the train, is liable to the person for mental anguish caused by the breach causing delay in the son's removal, where the company was, at the time of the making of the contract, advised of the necessity of the speedy removal of the son for medical treatment and the danger to his life by any delay in removal.

4. CARRIERS—CONTRACTS FOR SPECIAL TRAINS—BREACH.
   One contracting and paying for a special train is entitled to
   the services of the train, and the carrier running it to a farther
   point under false representations, and attaching other cars to
   it, is guilty of a breach of the contract.
5. DAMAGES—PUNITIVE DAMAGES—WHEN ALLOWED.
   Punitive damages should be awarded only where the wrong-
   doer is unduly negligent or the acts are unnecessarily aggra-
   vated.
6. CARRIERS—CONTRACTS FOR SPECIAL TRAIN—BREACH—PUNITIVE
   DAMAGES—MENTAL ANGUISH—EXCESSIVE DAMAGES.
   Where a railroad company contracting to furnish a special
   train for the speedy removal of plaintiff's son to a place for
   medical treatment breached the contract by delaying the
   removal for three hours with . knowledge of all the facts, a
   verdict for $10,000 was excessive, though punitive damages
   could be allowed and compensation for mental anguish could
   be recovered, and .the verdict must be reduced to $5,000.

APPEAL from Second Judicial District Court, Washoe
County; *L. N. French,* Judge, presiding.

 Suit by Joseph Burrus against the Nevada-California-
Oregon Railway. From a judgment for the plaintiff,
defendant appeals. **Conditionally affirmed.**

*James Glynn,* for Appellant.

*Mack, Green, Brown & Heer,* for Respondent.

By the Court, TALBOT, C. J.:

This action was brought to recover damages in the sum
of $20,000 for the breach of a contract to furnish a special
train. From the verdict and judgment in favor of the
plaintiff for $10,000, and from an order denying motion
for a new trial, this appeal is taken by the company.

Defendant operates a railroad from Reno in this state
to Doyle and Amedee in California. On the evening of
January 21, 1911, the plaintiff was informed that his son,
who had been caught in a storm and frozen, was suffer-
ing from blood poisoning, near Doyle, and it was neces-
sary that he be removed speedily to Reno for medical
treatment, and that death would likely result if such
removal and treatment were delayed. Under the allega-
tions and evidence of plaintiff it appears that the plaintiff
contracted with the appellant, for the consideration of

$125, which he paid in advance, for a special train to leave Reno at 6 o'clock the next morning and to take him to Doyle and return immediately to Reno with him and his son. According to the testimony of the plaintiff, at the time of the agreement for the special train, the plaintiff informed the appellant that he wished to bring his son to Reno for medical attention, of the location and serious illness of his son, and the necessity for his speedy removal to Reno for treatment, and the danger to the life of his son for delaying such removal. The train was not started at 6 o'clock, as agreed, but about twenty minutes later. Instead of being held in readiness and returning immediately with the plaintiff and his son to Reno, after its arrival at Doyle it was represented to plaintiff by defendant that it was necessary to run the train to Amedee, twenty miles farther, for the purpose of procuring fuel oil for the return trip. Plaintiff believed and relied upon this representation, and was not aware until later that it was not necessary to go to Amedee for fuel oil, and that none was taken on there. In going to Amedee and returning, the train was gone for about two hours. No oil was obtained at Amedee, and it was not necessary to procure any upon the whole trip. At Amedee the defendant took on the train a number of passengers for Reno and collected from them the usual fare. The train was further delayed upon the return to Doyle by attaching to it a freight car loaded with cattle. By reason of the trip to Amedee and the impeding of the train with the cattle car, it is claimed that the train was delayed for more than three hours in reaching Reno. It is alleged that the running of the train to Amedee, the misrepresentations as to the reasons therefor, and the taking on of the passengers and the car of cattle, and the delay consequent, were wilful and malicious, and that by reason of such wanton, wrongful, and negligent acts the plaintiff was caused to suffer much anxiety and great mental pain and anguish. Damages were claimed by reason of the premises and of the wrongful, wanton, wilful, and negligent acts of the defendant.

[1] The appellant contends that, as recovery is sought

for the breach of an interstate contract and for damages for mental suffering, the case is one primarily and exclusively within the jurisdiction of the Interstate Commerce Commission to make proper findings and preparations before any action could be maintained, and that the district court was without jurisdiction. We are cited to *Tex. & Pac. Ry.* v. *Abilene Cotton Oil Co.*, 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075, and other cases holding that a shipper cannot maintain an action at common law in the state court for excessive freight rates exacted on interstate shipments, where the rates charged were those duly fixed by the carrier according to the act and had not been found by the Interstate Commerce Commission to be unreasonable. If it be conceded that the Interstate Commerce Commission has exclusive original jurisdiction to determine the unreasonableness of interstate rates, it should be remembered that this is a different kind of a case and one to recover damages for the failure of the appellant to properly run a special train as agreed. If the amount of damages, or the reasonableness of rates, or whether charges are according to schedule, must first be determined by the Interstate Commerce Commission before suit on the various causes for damages, or torts, or breach of contracts of interstate carriers could be maintained, great would be the burdens of the commission, and long, troublesome, and expensive the delays which would result to litigants.

[2] There is an assignment that the court erred in its refusal to allow the defendant to amend the answer by setting up its failure to comply with the requirements of the interstate commerce act in the establishment of rates for special trains, or to plead the illegality of its contract by reason of its failure to comply with the law. The original complaint was filed on April 3, 1911, and after demurrer was sustained the amended complaint was filed on June 24, 1911, to which a demurrer was filed on July 3, which demurrer was argued and overruled on August 16. It did not specify the point covered by the proposed amendment. On November 3, 1911, appellant obtained an order further extending its time to answer until November 13.

November 8 defendant filed a motion to strike out certain portions of the amended complaint, and this motion was heard and denied on the following day. On November 13, more than eight months after the filing of the complaint and more than six months after the filing of the amended complaint, defendant filed its amended answer, upon which the cause was heard.

Two days after the beginning of the trial on November 20, and after the jury had been impaneled, defendant objected to the taking of the testimony on the grounds that the complaint was insufficient because it did not show compliance by the defendant with the interstate act. The objection was overruled, and no effort was made to amend the answer until after evidence had been heard during that day and part of the next, when defendant, without notice, applied to the court for leave to file an amendment to its answer.

Later, and after the defendant had introduced testimony and upon the following morning, motion for leave to amend the answer was renewed upon the affidavit of the defendant's attorney. This motion was overruled. As often held and as usual in general practice, amendments should be liberally allowed; but it is not every character of amendment which should be allowed after months of dilatory tactics and after the trial has progressed. Different courts have held that an amendment will not be permitted to an answer at any stage of the proceedings for the purpose of setting up such an unconscionable defense as the statute of limitations. The court properly refused to allow such a character of an amendment after so long a delay and because it sought to set up the appellant's own wrong by failing to comply with the law in matters not strictly germane to the cause of action or justifying the appellant in afflicting suffering and damage upon the plaintiff. Without the amendment there is no allegation or proof and no presumption that the appellant failed to comply with the law in having its rates for special train fixed and published, if any such

failure and noncompliance with the law could be deemed a defense which would relieve the appellant from the payment of the damages occasioned by its failure to properly run the special train. If, by charging more or less than scheduled or approved rates, common carriers may be relieved from their wrongful acts, the public might have little protection.

[3] It is urged that no recovery may be had for mental anguish aside from physical suffering. Many of the cases, and especially the older ones, so hold. Some of these decisions have already been reversed, and the tendency of modern authority is to allow damages for mental anguish where it is clearly within the terms of the contract or transaction and the knowledge of, and negligently or wantonly caused by, the defendant. (*Western Union Telegraph Co.* v. *Crocker*, 135 Ala. 492, 33 South. 45, 59 L. R. A. 398; *Western Union Telegraph Co.* v. *Coffin*, 88 Tex. 94, 30 S. W. 896; *McCoy* v. *Milwaukee St. R. Co.*, 88 Wis. 56, 59 N. W. 453; *Kelley* v. *Kelley*, 8 Ind. App. 606, 34 N. E. 1009, 36 N. E. 165; *Willis* v. *Western Union*, 69 S. C. 531, 48 S. E. 538, 104 Am. St. Rep. 828, 2 Ann. Cas. 52 and note, p. 55, and cases cited.)

Regarding freight: *Engle* v. *Simmons*, 148 Ala. 92, 14 South. 1013, 7 L. R. A. n. s. 96, 121 Am. St. Rep. 59, 12 Ann. Cas. 740 and note.

This court has already put itself in accord with this modern and better doctrine in *Barnes* v. *Western Union*, 24 Nev. 125, 50 Pac. 438, 77 Am. St. Rep. 791, which case has been considered favorably and followed by courts in other states. The defendant here, as well as all common carriers, dependent upon the right of eminent domain, its franchise, and the people of the community for its support, owes a duty to the public and its patrons, in addition to the moral obligation upon it and all honest men, to make due effort to keep the terms of the contract.

[4] Aside from any question of mental suffering, the plaintiff was entitled to the proper service of the special train for which he paid. Under *Forrester* v. *Southern*

*Pacific Co.*, 36 Nev. 247, 134 Pac. 753, 136 Pac. 705, 48 L. R. A. n. s. 1, and cases there cited, the company is liable for punitive damages. If unaware of the ethics which should guide men in business transactions, or unwilling to honestly observe its agreement for which it had collected a due consideration, it should be enlightened by being required to pay the damages incurred by the flagrant and intentional breach of the plain terms of its contract made under misrepresentation, and not allowed to thwart justice on the claim that it was guilty of a crime because it had not filed schedules required by the law—a matter over which plaintiff had no control. It must be assumed that, aside from the false pretense that the train had to go to Amedee for fuel oil, the company was well aware that, when a father paid for a special train in an effort to save the life of his son, he was entitled to something more than an accommodation cattle train. It was the duty of the company to send a regular train to care for its regular passengers and cattle shipments if the special train was able to cover the road.

[5] Recovery for mental suffering should be limited to special cases, and punitive damages should be awarded only where the defendant is unduly negligent or the acts are unnecessarily aggravated. Exemplary damages may be allowed for refusing to set off baggage at a station to which a ticket has been purchased. (*Webb* v. *Railroad Co.*, 76 S. C. 193, 56 S. E. 954, 9 L. R. A. n. s. 1218, 11 Ann. Cas. 834, and note, p. 837.)

The company was fully informed regarding the serious condition of the plaintiff's son, the necessity that he be speedily brought to Reno for medical treatment in order to save his life, and consequently of the great anxiety which would result to a fond parent who had paid for a special train in order to save his son. There is no excuse, legally or morally, for the wilful, flagrant, and deceptive breach by the appellant of the contract for the special train. Many cases appear in the books where common carriers have been held liable for failure to furnish

transportation in accordance with ordinary tickets, and a railroad company should be likewise liable for a failure to comply with its contract for a special train. In reviewing many decisions in the Forrester case, we said:

"In the case of *Morrison* v. *The John L. Stephens,* 17 Fed. Cas. 838, the libelant Morrison paid for passage and the exclusive use of a stateroom for himself and for his wife, who was an invalid, from New York to San Francisco. Relying on the waybill, which was different from the ticket Morrison had secured, the agent at Panama attempted to place a male passenger in the stateroom with Morrison and his wife. Morrison objected, and pleaded for the exclusive use of the room for himself and wife, but she was given a berth in a stateroom with two other females from Panama to San Francisco, and he was deprived of having the exclusive company of his wife. Damages in the amount of $2,500 were awarded."

[6] However, considered as compensation for mental anguish for the plaintiff under the peculiar circumstances of this case, or as punitive damages, either of which theories would support the verdict against appellant, we regard the amount as awarded to be excessive in consideration of the delay of about three hours occasioned by the breach of a contract for a trip which, necessarily, occupied nearly three times as many hours. If several thousand dollars an hour were not held to be excessive and the train had been long delayed, it might take all the little railroad to satisfy a judgment in favor of the plaintiff.

We have examined other assignments upon which so much reliance does not appear to be placed, and we find no error in the record aside from this.

If within ten days the plaintiff files in this court his consent that the judgment be modified so as to reduce the amount allowed him for damages to $5,000, an order will be made that the judgment stand as so modified; otherwise the district court will be directed to grant a new trial.

## On Petition for Rehearing

*Per Curiam:*

Rehearing denied.

[Note—On writ of error to Supreme Court of the United States,]