**Myriam GARCIA, Plaintiff,**

v.

**Mark DAWAHARE, et al., Defendants.**

**Case No. 2:06CV–00695–KJD–LRL.**

United States District Court,
D. Nevada.

March 26, 2008.

Julie A. Mersch, Law Office of Julie A. Mersch, Lawrence Mittin, Craig P. Kenny & Associates Las Vegas, NV, for Plaintiff.

Amy E. Jones, Gibbs, Giden, Locher, Turner & Senet, LLP, Kevin Lazar, Cotkin & Collins, Las Vegas, NV, William D. Naeve, Cotkin & Collins, Santa Ana, CA, for Defendants.

## *ORDER*

KENT J. DAWSON, District Judge.

Currently before the Court is Defendant Farmers New World Life Insurance Company's (FNWL) Motion for Summary Judgment (# 28), filed June 18, 2007. Also before the Court is Defendant's Motion for Judicial Notice (# 32), listed on the Court's docket incorrectly, as a Request for Review of Magistrate Decision, filed July 19, 2007. Plaintiff filed a Response (# 29) to Defendant's Motion for Summary Judgment on July 6, 2007, to which Defendant filed a Reply (# 31) on July 19, 2007. Additionally, Plaintiff filed a Supplemental Opposition to FNWL's Motion for Summary Judgment (# 37), on January 11, 2008, to which FNWL filed a Reply (# 40) on January 25, 2008. To date, no opposition has been filed to Defendant's Motion for Judicial Notice.

## I. *Background*

This action was initiated by Myriam Garcia, as a result of Defendant FNWL's initial denial of her claim under a life insurance policy issued by FNWL on the life of her late husband Loreto Garcia. Mr. Garcia died as a result of cardiopulmonary arrest caused or contributed to by

cardiomyopathy and/or chronic obstructive pulmonary disease. The policy was issued in reliance on an application and medical statement showing that Mr. Garcia's had a healthy medical history showing only a history of high blood pressure and a bout with the flu. After Mr. Garcia's death, however, a claim investigation conducted by FNWL revealed that Mr. Garcia's medical history showed he had a history of cardiomyopathy, congestive heart failure, and chronic obstructive pulmonary disease among other things, for a period of years up to and including the time he applied for the FNWL policy.

On or about May 30, 2003, Mr. Garcia initiated the purchase of a life insurance policy benefit of $100,000 by executing a Life Application with FNWL (Def.'s.' Mot. For Summ. J. Ex 1.) The application was completed with the assistance FNWL agent Mark Dawahare.[1] Mr. Garcia's responses to the questions on the Life Application indicated *inter alia* that he had never been diagnosed with high blood pressure, heart attack, chest pain, or any disorder of the heart or vascular system, had never been treated for or diagnosed with any disease or disorder of the lungs or respiratory system, that he was not currently, and had not been taking any treatments or medications within the past year, and that he had not seen a medical professional or been evaluated or treated in an urgent care center, emergency room, hospital, or other treatment facility, nor had been advised to have urine or blood tests, x-rays, scans, EKG's. or other tests. (Def.'s Mot. Fro Summ. J. Ex. 1.) The application's Certification, Acknowledgment and Authorization section was signed by Mr. Garcia, stating "I (we) declare that

the statements and answers to the questions in this application are true and complete." (Def.'s Mot. For Summ. J. Ex. 1.)

After completing the Life Application, a separate examination was conducted by paramedical examiner, Devan Powell, employed by an independent company, Portamedic. As part of the paramedical examination, Mr. Garcia was again asked a series of questions regarding his health and medical history. Specifically, the examination involved a questionnaire in which Mr. Garcia indicated that he had never consulted a physician or other healthcare provider, been treated. hospitalized, or taken medication for any disease or disorder of the lungs and/or respiratory system. that in the five years previous to the questionnaire he had not been advised to have surgery, treatment, or medical tests that he hadn't previously disclosed, and that he hadn't had any other illness, disease, or injury not disclosed in his previous answers. (*See* Def.'s Mot. For Summ. J. Ex 5.) Mr. Garcia did indicate that he had high blood pressure, yet failed to indicate any other disease or heart disorder. The paramedical examination also indicated that Mr. Garcia had suffered from the flu, from which he had enjoyed a full recovery. (*See* Def.'s Mot. For Summ. J. Ex 5.) Mr. Garcia was assisted with the paramedical questionnaire by Devan Powell, and both Garcia and Powell signed the attestation clause, indicating that "to the best of my knowledge and belief the statements and answers on this Application for Insurance are true and complete." (*Id.*) According to FNWL policy, the application was reviewed and evaluated and eventually approved at an increased premium rate.[2] (See Def.'s Mot. For Summ. J. Ex. 3, 8.)

---

1. Mark Dawahare was originally named as a Defendant in this action, yet Plaintiff's claims against him were voluntarily dismissed on or about June 1, 2006.

2. The increased premium rate was due to Mr. Garcia's Paramedical History Questionnaire and abnormal lab results. (*See* Def.'s Mot. For Summ. J. Ex. 3.) As part of this process. FNWL required Mr. Garcia to complete a "New Business Change request" stating that

Mr. Garcia passed away on January 31, 2005, due to cardiopulmonary arrest or possibly as a consequence of cardiomyopathy." (*See* Def.'s Mot. For Summ. J. Ex. 11.) Shortly thereafter, Plaintiff filed a claim for benefits under the policy. Because the policy had been in effect for less than two years, it had not yet become incontestable under Nevada law, and FNWL began a claim investigation. During the investigation, FNWL interviewed Plaintiff, requested further information from agent Dawaharè, and obtained Mr. Garcia's medical records.

Mr. Garcia's medical records predating his Life Application revealed a history of treatment for cardiomyopathy from June 1997, through December 1999, treatment for chronic obstructive pulmonary disease from June 1997, through June 2003, and treatment for congestive heart failure from November 1989, through June 2003. (*See* Def.'s Mot. For Summ. J. Ex. 13–24.)

As part of FNWL's investigation of Garcia's policy, and due to the discrepancy between Mr. Garcia's Life Application and medical records, FNWL interviewed agent Dawahare about Mr. Garcia's Application interview and questionnaire. Agent Dawahare represented to FNWL, under penalty of perjury, that Mr. Garcia disclosed nothing about his medical history of heart and lung complications during the completion of the Life Application.

As a result of the claim investigation, including Mr. Garcia's medical history, and his apparent failure to inform FNWL regarding his extensive medical history in the Life Application, as well as agent Dawahare's testimony regarding the Life Application procedure, FNWL concluded that

Mr. Garcia's policy was null and void because it would not have issued the policy had it known Garcia's true medical history, and because FNWL found that Garcia's Life Application and Paramedical History Questionnaire contained material misrepresentations regarding Garcia's history of cardiomyopathy and pulmonary problems. (*See* Def.'s Mot. For Summ. J. Ex. 30, 31.)

Following FNWL's denial of Plaintiff's application under Mr. Garcia's policy, Plaintiff filed the instant lawsuit on or about October 18, 2005. Plaintiff's Complaint contains claims for relief against FNWL, for (1) breach of contract; (2) equitable relief; (3) bad faith; and (4) violation of the Unfair Trade Practices Act. The Complaint also seeks attorney's fees and punitive damages.[3]

Upon Plaintiff filing suit, FNWL sought the testimony of both agent Dawahare and paramedical examiner Devan Powell in order to sustain its denial of coverage on Plaintiff's benefits claim. As a result of seeking Powell's testimony, FNWL discovered that subsequent to completing Mr. Garcia's paramedical history Powell had pled guilty to felonies involving lewd conduct with a minor. Upon learning of Powell's felony convictions, Defendant decided to re-evaluate its denial of Plaintiff's claim because its decision to deny the claim was based in part on information contained in the Paramedical History Questionnaire prepared by Powell. Knowing that Powell's convictions would challenge his credibility, and that his testimony was essential to establish the legitimacy of its claim denial, Defendant re-evaluated Plaintiffs claim and reversed its previous denial. Subsequently, Plaintiff was paid the full

there was a contractual change in the policy. The New Business Change Request form also contained an acknowledgment and authorization section in which Mr. Garcia indicated that his health was unchanged from the time

he had filled out the original application. (*See* Def.'s Mot. For Summ. J. Ex. 3.)

3. Plaintiff's claim for equitable relief was dismissed with prejudice on December 5, 2005 pursuant to a stipulation among the parties.

value of the policy, plus interest. (Def.'s Mot. For Summ. J. p. 18.)

Defendant brings the instant motion seeking to dismiss Plaintiff's remaining claims. Specifically. Defendant argues that Plaintiff's Breach of Contract claim is moot due to the fact that the insurance claim has been paid in full. Defendant also argues that Plaintiff's bad faith claim fails as a matter of law because FNWL acted reasonably when it denied Plaintiff's benefits claim. Additionally, Defendant contends that Plaintiff is not entitled to attorneys' fees and/or punitive damages.

Plaintiff, in opposition, does not contend that misrepresentations were made on Mr. Garcia's Life Application, but rather, Plaintiff argues that FNWL is at fault for various reasons, including that Mr. Garcia was unable to understand the questions asked of him by agent Dawahare when completing the application questionnaire. (Pl.'s Opp. p. 1.) By claiming that Mr. Garcia was unable to understand English, Plaintiff contends that FNWL could not have properly rescinded the policy and refused Plaintiff's claim initially, and therefore, that Defendant breached its contract with the Plaintiff. Plaintiff additionally contends that Defendant's denial of her benefits claim without making further inquiry as to Mr. Garcia's ability to understand English demonstrates bad faith on their part. Additionally, Plaintiff argues that Defendant acted in bad faith by failing to follow certain procedures to ensure that their claim investigation was fair and impartial.

## II. Standard of Law for Summary Judgment

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Fed. R.Civ.P. 56(e).

All justifiable inferences must be viewed in the light must favorable to the nonmoving party. *See Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348. However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials provided by Rule 56(e), showing there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court need only resolve factual issues of controversy in favor of the nonmoving party where the facts specifically averred by that party contradict facts specifically averred by the movant. *See Lujan v. Nat'l Wildlife Fed'n.,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *see also Anheuser–Busch, Inc. v. Natural Beverage Distribs.,* 69 F.3d 337, 345 (9th Cir.1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment). "[U]ncorroborated and self-serving testimony." without more, will not create a "genuine issue" of material fact precluding summary judgment. *Villiarimo v. Aloha Island Air Inc.,* 281 F.3d 1054, 1061 (9th Cir.2002).

Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of

an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. Summary judgment shall not he granted if a reasonable jury could return a verdict for the nonmoving party. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

### III. Analysis

As discussed above, Defendant seeks summary judgment on Plaintiff's remaining claims for breach of contract, bad faith, and violation of the Nevada Unfair Trade Practices Act. Specifically, Defendant argues that Plaintiff's breach of contract claim is moot under NRS § 687B.210 because the claim has been paid in full. Defendant also argues that FNWL cannot be liable under a bad faith theory because its initial decision to deny Plaintiff's claim under the policy was reasonable. Plaintiff in opposition, argues that a genuine issue of material fact exists whether Mr. Garcia was capable of making misrepresentations in his insurance application because he "did not understand a lot of English," and that FNWL's decision to deny coverage was not reasonable. (Def.s' Opp. p. 4.)

### A. Breach of Contract

■ As stated above, the Defendant argues that Plaintiffs breach of contract claim is barred as a matter of law because any obligations owing under the life insurance contract were extinguished by virtue of NRS § 687B.210 when FNWL made full payment of the policy.

NRS § 687B.210 states in relevant part, Whenever ... payments under a life ... insurance policy ... become payable in

accordance with the terms of the policy or contract ... and the insurer makes payment thereof in accordance therewith ... the payments fully discharge the insurer from all claims under the policy contract.

Here, Plaintiff does not dispute that FNWL paid Plaintiff the full face value of the policy in January 2006. Instead, Plaintiff argues that her breach of contract claim survives because she suffered emotional distress and/or punitive damages. Plaintiff's argument fails. First, the Court finds that FNWL did in fact pay Plaintiff the full value of the policy, plus interest, thus discharging FNWL from Plaintiff's claims under the policy contract. Additionally, according to Nevada's exemplary and punitive damages statute, NRS § 42.005(1), such damages can be awarded only for "the breach of an obligation not arising from contract."[4] Here. Plaintiff's attempt for punitive damages arise from her breach of contract claim, and therefore cannot stand under NRS § 42.005(1). Rather, a claim for punitive damages must be based upon a separate tort. *See Clark v. Lubritz*, 113 Nev. 1089, 944 P.2d 861 (1997).

### B. Bad Faith

Plaintiff claims that FNWL acted in bad faith when it initially denied her claim, arguing that FNWL consciously denied the claim without a reasonable basis. Specifically. Plaintiff argues that FNWL should have followed up on Powell and Dawahare's failure to submit an Interpretation Amendment Form when assisting Mr. Garcia during his Life Application process.[5] Plaintiff also argues that

---

**4.** Plaintiff cites *Burrus v. Nevada C.O. Ry.*, 38 Nev. 156, 145 P. 926 (1915), to argue that emotional distress and/or punitive damages are recoverable under a breach of contract theory. The Court finds however, that the reasoning in *Burrus*, regarding punitive damages arising from a breach of contract claim

was superceded by the passage of NRS § 42.005 in 1989.

**5.** According to Plaintiff, Powell's statement on the paramedical exam indicated that a language other than English was used during the

FNWL acted in bad faith by failing to contact Devan Powell prior to initially denying Plaintiffs claim.[6] Plaintiff further buttresses her contention that FNWL acted in bad faith by pointing out that FNWL relied on agent Dawahare's statements regarding Mr. Garcia's Life Application procedure in the face of allegations that Dawahare had been accused of falsifying information on application forms.[7] Plaintiff believes that these factors taken together, raise triable issues of fact regarding whether FNWL acted in bad faith. Defendant argues that Plaintiffs bad faith claim fails as a matter of law because FNWL acted reasonably in denying Plaintiffs initial claim under the policy.

 The Supreme Court of Nevada has delimited a finding of bad faith on the part of an insurer when denying a policy claim. Specifically, a finding of bad faith requires evidence of:

(1) an insurer's denial of (or refusal to pay) an insured's claim; (2) without any reasonable basis; and (3) the insurer's knowledge or awareness of the lack of

any reasonable basis to deny coverage, or the insurer's reckless disregard as to the unreasonableness of the denial

*Schumacher v. State Farm Fire & Cas. Co.*, 467 F.Supp.2d 1090, 1095–1096 (D.Nev.2006) (citing *United States Fidelity & Guar. Co. v. Peterson*, 91 Nev. 617, 540 P.2d 1070 (1975)). The Nevada Supreme Court has further stated that an insurer acts in bad faith when it refuses "without proper cause, to compensate the insured for a loss covered by the policy." *Pemberton v. Farmers Insurance Exchange*, 109 Nev. 789, 858 P.2d 380 (1993), The Ninth Circuit, in applying California law, has held that a bad faith claim should be dismissed on summary judgment "if the defendant demonstrates that there was a genuine dispute as to coverage."[8] *Feldman v. Allstate Ins. Co.*, 322 F.3d 660 (9th Cir.2003). Under this reasoning, a genuine dispute may concern either a reasonable factual dispute, or unsettled areas of insurance law. *Id.* Here, Plaintiff contends that FNWL failed to fully investigate her claim prior to initially denying it,

---

exam, without the use of an interpreter. (Pl.'s Opp'n at 10.)

**6.** Plaintiff argues that had FNWL contacted Mr. Powell as part of its investigation of Plaintiff's claim, it would have learned that Mr. Powell was a convicted sex offender and therefore presumably would have granted Plaintiff's claim due to Powell's lack of credibility. (*See* Pl.'s Response at 9.) The Court finds this reasoning unpersuasive. as explained hereinbelow. Powell's felony convictions had not been entered at the time FNWL made its initial investigation, and further, there is no guarantee that had FNW'L learned of said convictions during its initial investigation, such knowledge would have had an effect on their decision regarding Plaintiff's claim.

**7.** Specifically, Plaintiff points out that Dawahare's direct supervisor acknowledged that he had received several letters complaining that Dawahare had made misrepresentations to insureds regarding their coverage

amounts. (*See* Pl.'s Opp. p. 10–11.) The Court finds that although FNWL may have received reports regarding allegations of Dawahare making misrepresentations. FNWL did not rely solely on Dawahare's representation in making its decision to deny Plaintiff's benefits claim. The Life Application that Dawahare assisted Mr. Garcia to complete was supported by the paramedical examination, completed by an independent paramedical examiner. Furthermore, as explained herein, Dawahare stated under penalty of perjury. that the Life Application was property completed. FNWL's reliance on Dawahare's statement was just one contributing factor to FNWL's initial decision to deny Plaintiff's benefits claim.

**8.** Specifically, the court stated, "[b]ecause the key to a bad faith claim is whether denial of a claim was reasonable, a bad faith claim should be dismissed on summary judgment if the defendant demonstrates that there was "a genuine dispute as to coverage." " *Feldman v. Allstate Ins. Co.*, 322 F.3d 660 at 669.

listing various steps FNWL could have taken to have performed a more thorough investigation, that presumably would have altered their initial decision. The Court disagrees, and finds that FNWL's decision to deny Plaintiffs policy claim was made after conducting a sufficient investigation upon which it formed a reasonable basis to deny Plaintiff's claim.

Here, though Plaintiff suggests additional precautions and investigative measures that FNWL could have engaged in prior to making its initial decision to deny her claim, she has failed to demonstrate that FNWL denied her claim without a reasonable basis, or that FNWL denied her claim with knowledge that it had no reasonable basis to deny coverage, or that it recklessly disregarded the unreasonableness of the denial. To the contrary, the Court finds that FNWL had a reasonable basis for denying coverage,

When FNWL initially reviewed Mr. Garcia's Paramedical History Questionnaire and Life Application, there was no indication that he had a history of heart/vascular, or respiratory/lung conditions. Later, FNWL's claim investigation, conducted after Plaintiff had made a claim under the policy, indicated that Mr. Garcia had a significant history of cardiomyopathy, chronic obstructive pulmonary disease, and congestive heart failure—none of which had been disclosed on his Life Application, or in the Paramedical History Questionnaire. Furthermore, when FNWL interviewed agent Dawahare about Mr. Garcia's Life Application. Dawahare responded under penalty of perjury, that Mr. Garcia's Life Application interview was conducted properly.

Although Plaintiff contends FNWL's decision would have been different had it contacted Powell prior to denying Plaintiff's claim under the policy, the Court finds FNWL would not have discovered Powell's felony convictions. FNWL issued its decision to deny the policy on or about June 16, 2005, and according to the docket in Mr. Powell's criminal case, Powell was not arraigned until some six months later.[9] (*See* Def.'s Reply Ex 1.) Moreover. Powell did not plead guilty until December 15.2005, and was not convicted until March 9, 2006.

The Court also finds that FNWL did not act in bad faith by denying Plaintiff's claim without following up on Dawahare and Powell's failure to provide Interpretation Amendment Forms. According to FNWL's Agent Guide, agents were required to complete an amendment form "each time an interpreter was used." (Pl.'s Opp. p. 7.) Here, the Life Application does not indicate that a language other than English was used during the completion of the form, and although the Paramedical History Questionnaire states that it was taken in a language other than English, the form also indicates that no interpreter was used. (*See* Def.'s Mot. For Summ. J. Ex. 5.) Therefore, according to FNWL's Agent's Guide, there was no reason for FNWL to have required Dawahare or Powell to submit an Interpretation Amendment Form.

Additionally, FNWL has provided evidence suggesting that had FNWL known of Mr. Garcia's extensive medical history at the time he applied for the policy, the policy would not have been issued. This reasoning led FNWL to find Mr. Garcia's

---

9. As stated above, Defendant has filed a Motion for Judicial Notice (# 32), requesting the Court to take judicial notice of several facts, including: (1) that Devan R. Powell was arraigned on or about December 9, 2005; (2) Devan R. Powell pled guilty on or about December 15, 2005; (3) Devan R. Powell was convicted on or about March 9, 2006. The Court has reviewed the documents, and pursuant to Fed.R.Evid. 201(b)(2), finds it appropriate to take judicial notice of said facts.

policy null and void under NRS § 687B.110 at the time Plaintiff made her claim for benefits. NRS § 687B.110 states that misrepresentations of or omissions in an insurance contract cannot prevent recovery under the policy or contract, unless:

The insurer in good faith would either not have issued the policy or contract, or would not have issued it at the same premium rate, or would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

As part of FNWL's initial claim investigation, FNWL's claims examiner sought an opinion from the company's underwriting department regarding whether or not a policy would have been issued had Mr. Garcia's true medical history, and then current condition been truthfully disclosed during the application process. In response, FNWL's underwriters indicated that the policy would not have been issued. Moreso, had the Life Application been answered truthfully, FNWL's underwriting department would have ordered Mr. Garcia's medical records, (Def.'s Mot. for Summ. J. p. 14.) After receiving this opinion from its underwriting department, including consultation with an FNWL underwriting specialist,

FNWL sought the opinion of a medical consultant, who confirmed that had Mr. Garcia's medical history been known at the time of his application, the policy would not have been issued. Therefore, at the time it initially denied Plaintiffs policy claim. FNWL believed the policy was null and void pursuant to NRS § 687B.110.

Finally, Plaintiff claims that summary judgment is precluded because a triable issue of fact exists as to whether Mr. Garcia was capable of misrepresenting his medical history when completing his Life Application. The Court disagrees. Here, the Court must determine whether FNWL's decision to deny Plaintiffs claim under the policy was reasonable, and not to make a determination regarding the legitimacy of the policy, or about Plaintiffs ability to recover benefits under it.[10] As discussed in detail above, the Court finds that FNWL's decision was reasonable. Therefore, Plaintiff's argument that Mr. Garcia was not capable of misrepresenting his medical history is not dispositive here, and although Plaintiff may argue that the issue of misrepresentation buttresses her argument that FNWL acted in bad faith, the Court again disagrees. Here, Plaintiff has failed to establish that FNWL did not have a reasonable basis to deny Plaintiff's claim or that FNWL consciously disregarded that it did not have a reasonable basis to deny the claim.

---

**10.** As stated above, Plaintiff's remaining claims allege breach of contract, bad faith, and violations of the Nevada Unfair Trade Practices Act. The Court has established hereinabove, that Plaintiff's breach of contract claims fails under NRS § 687B.210 because FNWL paid the full value of the policy, plus interest in January 2006. Plaintiff's remaining claims, are for bad faith, and violation of the Nevada Unfair Trade Practices Act. As stated above, a finding of bad faith requires evidence that an insurance denial be made without any reasonable basis, the insurer's knowledge that a reasonable basis was lack-

ing, or the insurer's reckless disregard as to the unreasonableness of the denial. *See Schumacher v. State Farm & Cas Co.*, 467 F.Supp.2d at 1095–1096. The Court has established that FNWL did not act in bad faith, and consequently did not violate any provision of Nevada's Unfair Trade Practices Act. Plaintiff's remaining claims do not seek an interpretation of the validity of the policy, an interpretation of policy language, or Plaintiff's ability to recover the benefits under the policy. Instead, Plaintiff's claims hinge on whether or not FNWL had a reasonable basis for initially denying her benefits claim.

## C. Unfair Trade Practices Act

■ As stated above, Defendant also seeks dismissal of Plaintiff's Unfair Trade Practices Act claim under NRS § 686A.310. Under NRS § 686A.310. it is considered an unfair practice to "fail[ ] to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear" and/or "fail[ ] to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies" among other things.

The Court has established that Defendant did not fail to effectuate a prompt, fair and equitable settlement with Plaintiff when it initially denied her claim. Moreover, the Court also finds that FNWL did not fail to implement reasonable standards in its investigation of Plaintiff's claim, nor did FNWL violate any other provision of the Nevada Unfair Trade Practices Act.

## IV. CONCLUSION

For the reasons stated herein, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (# 28) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Judicial Notice (# 32) listed on the Court's docket incorrectly, as a Request for Review of Magistrate Decision, is **GRANTED**.